BENJAMIN H. SNOW & others *vs.* HATTIE W. PAINE.

To recover possession of real estate levied on, under Gen. Sts. *c.* 103, § 1, as estate purchased by a debtor with title conveyed to another to defraud creditors, there must be proof, in the absence of a trust for the debtor, that the grantee was a party to the fraud, or that the deed was a voluntary deed and wholly without consideration moving from him.

When a debtor, with intent to defraud creditors, pays part of the purchase money for real estate, and his wife with her own money pays the residue, and the title is conveyed to her, she being ignorant of the intended fraud, the creditors cannot by a levy under Gen. Sts. *c.* 103, § 1, recover from her any portion of the premises; and this though the money paid by her is money given her by her husband in repayment of money lent to him; but an instruction is erroneous which leaves the jury to infer that her payment may be made with her husband's money or with money lent by her to him.

Upon the question whether money borrowed belongs to the husband or to his wife, the fact that she gave her own note for it is evidence for the jury.

When a person's intent is in issue, he, being a witness, may testify to it.

A declaration of a plaintiff that the action ought not to have been brought, is admissible evidence for the defendant.

In an action against a wife, the issue being whether certain money in a bank was hers or her husband's, she can testify that she had given her husband money to be there deposited for her.

WRIT OF ENTRY, brought to recover real estate attached under Gen. Sts. *c.* 123, § 55, as having been purchased by James H. Paine, husband of the tenant, and by his direction conveyed to her, in order to prevent an attachment of the same by his creditors existing at the time of the alleged purchase and conveyance.

At the trial in the Superior Court, before *Bacon*, J., the demandants offered in evidence a writ bearing date November 1, 1869, wherein the demandants were plaintiffs, and James H. Paine defendant, with the officer's return thereon showing an attachment of the demanded premises, and also the record of the

judgment and of the execution issued thereon, with the returns of the officer and the appraisers thereupon, showing the levy of the execution upon the premises.

One Lancy testified for the demandants that by contract in writing, he agreed to sell the demanded premises to James H. Paine, and that before the contract was executed, Paine asked him whether B. H. Snow, one of the demandants, was in the habit of coming to his house, and on receiving an affirmative answer, requested the witness not to let Snow know of his purchase of the premises and of his intention to build a house, as he owed Snow and the other demandants, and did not mean to pay them at present; that at the time the contract was made, Paine told him he had about $600 in the Seamen's Savings Bank of Provincetown, money which he had earned at sea, but standing in the name of his wife, which he agreed to pay down, and give a mortgage on the premises for $450, the balance of the contract price; that soon afterwards he paid the $600, and requested the witness to give a receipt therefor running to his wife, and expressed regret that the contract had not been made in his wife's name instead of his own; that the witness thereupon made the receipt as requested; that at the time of the payment of the $600, Paine said he had changed his mind about giving a mortgage; that he was going to sea; that one Henry J. Lancy would procure the balance and give it to his wife, and that she would bring it to the witness, and requested the witness on receipt of it to make a deed of the premises to his wife, and that he, the witness, complied with this request. The demandants also introduced evidence to show that shortly before going to sea, Paine procured, in addition to his own signature, the signature of Lancy to a note for $450, and that the note was lodged in the Provincetown Bank for discount.

The tenant testified, that about January 11, 1868, her husband transferred to her the sum of $588.41, standing in his name and to his credit in the Seamen's Savings Bank; that he made this transfer to repay her for various sums of money, the results of her own earnings, which she had loaned him before that date, and which he had promised to repay to her; that from time to time

she had deposited various sums in the bank, which she had earned as a dress-maker, and that the same stood in her own name, and that the $600 paid to Lancy was made up of these deposits and interests accruing thereon, and the amount of the transfer of $588.41; that after the $600 was withdrawn from the bank, there remained a balance in her favor; that she requested her husband to go to Benjamin Lancy and make a bargain for the demanded premises; that she gave him the $600 to make the payment; that he acted throughout the transaction solely as her agent; that she had no knowledge of any intention on his part to delay, hinder or defraud his creditors, and had no such intent herself, and had no intent to aid him in so doing; that she did not know he was indebted to the demandants; that by his direction she went, after he had gone to sea, to the Provincetown Bank, for the $450, and was unable to obtain it on the note left there for discount; that thereupon she went to Lancy, and bor· rowed the sum of him, and gave him therefor her own note for that amount, with which sum she paid the balance due for the demanded premises, and took the deed in her own name.

The tenant was asked by her counsel, what her intent was in purchasing the demanded premises. This question was objected to by the demandants, but the court permitted it to be asked, and the tenant answered that she had no other intent, but to get a home for herself and two orphan children of a deceased sister, whom she and her husband had undertaken to support. The court allowed the tenant to be asked by her counsel to state whether or not she had had a conversation with Solomon Bangs, Jr., one of the demandants, and if she had, what that conversation was. To this question the demandants' counsel objected, and the objection being overruled, the tenant answered, that Bangs told her, that in his opinion the action ought not to have been brought, and would end in the demandants' having to pay costs, and that they, the other demandants, would be calling on him to pay such costs. The tenant was also asked by her counsel, whether or not she had, at various times, given her husband money of her own to deposit in the bank for her, and against the demandants' objection, she was allowed by the court to state that she had done so.

" 1. The demandants asked the court to rule that if before the transfer of the $588.41 on or about January 11, 1868, Mrs. Hattie W. Paine had furnished her husband with money which he had not at that time returned to her, she had no demand in law against him for the same, and any transfer by him to her at that time of money or property designed as a return of the money thus furnished, would be illegal and fraudulent, as against his creditors existing at that time. The court declined so to rule, but ruled that such transfer would be fraudulent as to such creditors if made by Paine to hinder or delay them, and his wife knew or had reasonable cause to know of his purpose, and not otherwise.

" 2. The demandants asked the court to rule that the taking and holding property fraudulently conveyed to a party to secure the same from the creditors of the grantor or real purchaser, may constitute legal fraud as to such creditors, though the party so taking and holding might be ignorant of the fraudulent intent of the grantor or real purchaser; and that the taking and holding such property, giving therefor a largely inadequate consideration, would tend to show such legal fraud, though there may have been no intent to aid such grantor or real purchaser in his fraudulent purpose. The court declined to give the latter portion of the instruction asked, but instructed the jury that if Mrs. Paine paid any portion of the purchase money, however small, in ignorance of her husband's purpose to delay or defraud his creditors, and took a deed of the premises, his preëxisting creditors could not attach the same as fraudulently conveyed to her.

" 3. The demandants asked the court to rule that if James H. Paine, the husband of the tenant, contracted with Benjamin Lancy for the purchase of the demanded premises for the sum of $1050, and paid therefor the sum of $600 of his own money, intending to have such real estate conveyed to his wife for the purpose of preventing his creditors from obtaining the same, and giving directions for such conveyance, and his wife thereafterwards through his instigation, suggestions, or advice, paid the balance of the purchase money and took a deed of the premises, the demandants would be entitled, as against her, to recover the

whole of said premises, or such proportion thereof as the payment made by James H. bore to the whole amount of the purchase money, even though she was not aware of his intended fraud upon his creditors. The court declined so to rule, and instructed the jury that under the circumstances named in their request the demandants would be entitled to no portion whatever of the demanded premises.

" 4. The demandants asked the court to rule that if the $450 furnished by Lancy to the tenant, was furnished under an arrangement made by Paine with Lancy before he went to sea, the taking of a note for the amount from the tenant by Lancy would not, as to Paine's creditors existing before the bargain for the house, make the $450 the property of the tenant. The court ruled that the $450 would not be the property of the tenant, if paid to her solely under such arrangement, made and completed in all its particulars by said James H. before going to sea, but the fact that the tenant gave her note for the same was to be considered as bearing upon the question as to whether $450 was her property.

" The tenant requested the court to rule, that if to make the first payment of $600 for the demanded premises, she added to the amount transferred to her by her husband or by his order, an amount sufficient to make $600, without knowledge of his intention to delay or defraud his creditors existing before such transfer, the conveyance to her would be good as against such creditors, although the transfer to her was designed by her husband to delay or defraud his creditors. And the court so ruled. The court also ruled that the demandants could not recover, unless the husband of the tenant paid the whole purchase money, provided the tenant did not participate in her husband's fraudulent intent."

The jury returned a verdict for the tenant, and the demandants alleged exceptions.

*J. M. Day*, for the demandants.

*G. Marston & J. L. Eldridge*, for the tenant.

COLT, J. The demandants levied an execution recovered against Paine upon land the record title to which was in his wife by deed from Lancy. This writ of entry is brought to recover possession

of the same from the tenant, on the ground that the conveyance was made to her in fraud of her husband's creditors. When the record title to real estate taken on execution is not in the judgment debtor, the creditor can only establish his title against the tenant, when there is no express or implied trust, by proving that the tenant either participated in the fraudulent purpose of his grantor, or that the deed to him was without good consideration and wholly voluntary. The same rule applies to the fraudulent procurement of a conveyance to a third person, under the statute. When the tenant has paid part of the consideration for the deed and has innocently acquired the legal title, his title cannot be defeated by the levy of an execution against one who with intent to defraud his creditors paid the other part of the consideration, and assented to the conveyance. The equitable interest of the debtor, if any, which arises from his part payment of the purchase money, cannot be reached by proceedings under the statute. Gen. Sts. c. 103, § 1. *Clark* v. *Chamberlain*, 13 Allen, 257. *Hinckley* v. *Phelps*, 2 Allen, 77. *Bancroft* v. *Curtis*, 108 Mass. 47.

The case was tried upon this view of the law, and the rulings were in the main correct. Those asked for by the demandants were properly refused.

1. The disability which prevents husband and wife from contracting with each other does not prevent him from returning to her the money which she had previously placed in his keeping; such a transaction would not be a gift and would certainly be valid if free from any fraudulent intent. The instruction given on this point, if material, was sufficiently favorable to the demandants. *Bullard* v. *Briggs*, 7 Pick. 533. *Forbush* v. *Willard*, 16 Pick. 42.

2. The refusal to give the second instruction asked, and the ruling that if the tenant had paid any part of the purchase money, however small, in ignorance of her husband's purpose, his creditors could not attach the same as fraudulently conveyed to her, taken in connection with the other rulings, was in conformity with the law as above stated. It does not appear that upon the question of good faith the jury were not permitted to give full effect to the fact that the amount paid by the tenant was a very small part of the value of the whole estate.

3. The court was asked to rule in substance that the demand-ants were entitled to recover a part of the demanded premises which should have the same proportion to the whole which the amount paid by the judgment debtor bore to the whole purchase money, upon the ground, apparently, that such portion of the es-tate, being held under an implied trust in favor of the husband, passed under the statute by the levy of the execution to the plain-tiffs, however innocent the wife may have been. But the difficulty is that a resulting trust is not created by implication of law in favor of one who pays part of the purchase money of real estate conveyed to another, unless such payment is made for some spe-cific or distinct interest in the estate. All the evidence here shows that whatever was paid by the husband was only a general pay-ment towards the entire purchase. *McGowan* v. *McGowan*, 14 Gray, 119.

4. Upon the question whether the avails of the $450 note be-longed to the wife or to the husband, it is plain that the giving of the note by her, if without fraudulent intent on her part, was a fact proper for the consideration of the jury.

5. The several items of evidence objected to were properly ad-mitted. The knowledge and intent of the witness in the trans-action in question was a fact which had a bearing on the issue before the jury, and of which she may properly testify. *Thacher* v *Phinney*, 7 Allen, 146. It does not appear that the declara-tions of one of the parties to the record against his interest were not properly admitted. And evidence of the relations of the husband and wife, with reference to their deposits in the bank, were competent on the question of ownership, and as affecting the knowledge and intent of the parties.

6. But at the request of the tenant the jury were instructed that the conveyance to her would be good as against her hus-band's creditors, if, without knowledge of his intention to de-fraud them, she added to the amount transferred to her from the savings bank, an amount sufficient to make up the first payment of $600. Under the facts disclosed, we are of opinion that this instruction should not have been given without some further qualification, and that it may have misled the jury. It was in

dispute whether the amount in the savings bank belonged to the husband or to the wife. The jury may have found that it belonged to him. The few dollars paid by the wife may have been advanced by her to her husband as an accommodation to him, and to make up the amount, and not as a part payment by her of a part of the consideration of the deed. Such a payment would not relieve the transaction from its character as a voluntary conveyance. And yet we fear, under the instructions given, the jury may have understood otherwise. On this ground alone

*The exceptions are sustained.*