CROUP & SHAFER v. MORTON ET UX.

1. **Homestead; IN WIFE'S NAME: LIABILITY FOR HUSBAND'S DEBT.** The creditor of an insolvent person can subject to the payment of his debt, real estate standing in the name of the wife, but toward the payment of which the debtor has contributed, to the extent of his contribution thereto, and this rule is not varied by the fact that the real estate in controversy embraces the homestead, which would to the same extent be liable for an antecedent debt. BECK, J., *dissenting.*

*Appeal from Madison District Court.*

WEDNESDAY, JUNE 12.

ACTION in equity to subject certain real estate standing in the name of the defendant Sallie M. Morton to the payment of a judgment against her husband, the defendant L. M. Mor-

ton. Some time prior to the rendition of the judgment, but after the debt was contracted, the defendant L. M. Morton negotiated a purchase in the name of his wife of four lots in the town of Winterset, and a deed thereof was executed to her. The purchase price was nine hundred dollars. It does not appear that she had any money or other property at the time, and he was insolvent, and had made an assignment for the benefit of his creditors. The debt due the plaintiffs was contracted before the assignment. At the time of his assignment he estimated his liabilities at nine thousand dollars and his assets at fourteen thousand dollars; but the assets proved to be insufficient. At the time the lots were purchased it does not appear that he knew that the assets had proved to be insufficient, but he said at that time that he did not feel able to purchase the property, because he was in debt. The cash payment, two hundred dollars, was paid by a minor son. The money was the result of his earnings, but he had been virtually emancipated. This payment was made by him for the benefit of his mother, and with the purpose, as he expressed it, of procuring her a home. A house was built upon two of the lots at the cost of from one thousand two hundred to one thousand five hundred dollars. The other two lots were sold for nine hundred dollars. The house and remaining lots became the homestead of the defendants. The nine hundred dollars received from the sale of lots was applied upon the indebtedness incurred in building the house. The balance due on the property, which appears to have been between one thousand and one thousand four hundred dollars, was paid by the husband. The plaintiffs seek to subject the whole property, upon the ground that the wife's name was fraudulently used as a cover. The court so held, and rendered a decree for the plaintiffs. Defendant Sallie M. Morton appeals.

*McCaughan & Dabney*, for appellant.

*Leonard & Steele*, for appellees.

ADAMS, J.—It was the son's right to use his money to secure his mother a home.   How it was expected that a house would be secured, even with the use of the money he advanced, does not appear, nor do we think it material.   It may have been contemplated that something would be realized from a sale of a part of the lots, as was done.   The purchase, then, so far as we are able to see, was made in good faith.   But about half of the cost of the property, as it stands improved, was paid by L. M. Morton, the judgment debtor.   The question presented, then, is as to whether a creditor of an insolvent debtor can be allowed to subject to the payment of his debt real estate standing in the name of a third person, but toward the payment for, or improvement of, which the insolvent debtor has contributed, or, if the property is not wholly liable, whether it may be regarded as liable to the extent of the contribution. We have to say that we think it is liable to the extent of the contribution.   Several authorities are cited by appellant, in which it is claimed that it has been held otherwise.   In *Webster v. Hildreths*, 33 Vt., 457, the defendants were husband and wife, and had been living upon a farm, the title to which had been acquired by the wife by her own means.   The farm, however, had been considerably improved by the husband. He had cleared a portion of the land and built fences, etc., and had enhanced its value.   The plaintiff, who was a judgment creditor of the husband, claimed that seven-twelfths of the value of the farm had been contributed by the husband. He accordingly levied upon seven undivided twelfths of the farm, and having bought the same at the execution sale, brought an action in equity to confirm his title.   But the relief sought was denied.

It did not appear that the labor of the husband had been expended upon the farm with the design of defrauding creditors.   It was expressly found that no fraud appeared, and under the facts disclosed we doubt not with good reason.   At all events, where an insolvent husband enjoys the use and

1. HOMESTEAD: in wife's name: liability for husband's debt.

benefit of his wife's farm for the support of his family, and by his labor makes such repairs and improvements from time to time as are required by good husbandry, it does not appear to us that the labor should necessarily be considered as expended with the design of defrauding creditors, although the value of the farm may thereby be considerably enhanced. Each case must doubtless be determined upon its own facts. In *Peck v. Brummagim*, 31 Cal., 440, the husband had built a house upon his wife's land at the cost of about eighteen thousand dollars. Having died insolvent, his administrator was about procuring an order for a sale of the land and house. The wife applied for and obtained an injunction, and it was held that it was properly granted. Whether the house was built before or after the husband became insolvent the case does not show. But it was held that the administrator could not maintain any claim against the property which his intestate could not have successfully asserted in his life-time, or his heirs afterward. A creditor in an equitable action is not thus limited.

*Snow v. Paine*, 114 Mass., 520, cited by appellant, was an action at law to recover possession of real estate where the plaintiff held only through an execution sale of an equitable interest.

In *Corning v. Fowler*, 24 Iowa, 584, an insolvent husband had built a house upon his wife's land. The plaintiff was a judgment creditor of the husband, and brought the action to establish a lien upon the land. The petition was dismissed, and we think very properly. The court say: "The wife cannot without her consent be made the trustee of her husband, holding her land in trust for the payment of liens in the creation of which she had no part." It will be seen that the establishment of a lien as sought would have given the creditor a right in the property not co-ordinate with that of the wife, but in some sense paramount. It would have been enforceable, even though the wife's interest had become extinguished by the enforcement.

This could hardly have been allowed, even if the house had been built with the wife's consent.

In the case at bar it does not appear distinctly whether the house should be considered as built by the wife or husband. It was paid for in part by the proceeds derived from the sale of lots, which must be considered as her money. The husband's money must have been applied in paying the balance, and in making the deferred payments upon the lots. He may then be considered as having furnished a part of the consideration with which the property was acquired, and the case comes within the ruling in *McTighe v. Bringolf*, 42 Iowa, 455. In that case a married woman purchased real estate and paid for it with borrowed money, which she repaid in part with her earnings. Under the law, as it then was, her earnings belonged to her husband. It was held that, so far as the borrowed money was repaid by her earnings, it was repaid by her husband's money, and to that extent the real estate purchased was liable for his debts. That case differs from the one at bar in this: No claim was made in that case that the property in question constituted the debtor's homestead. In the case at bar stress is laid by appellant's counsel upon this point. They say: "When a man assumes the responsibility of marriage, and of raising a family, he at the same time assumes the responsibility of providing them a home." However plausible this may sound, it is not true that an insolvent person can be allowed to use his assets to provide his family with a home, and leave his creditors unprovided for. It may be presumed that his assets have been accumulated, to some extent, by the very credit which he has obtained, and, liberal as our statute is in the matter of homestead, it does not enable a person to acquire one at other persons' expense. And if an insolvent person cannot be allowed to furnish the whole consideration for the homestead, and hold it exempt from antecedent debts, he cannot, for the same reason, we think, be allowed to furnish a part of the consideration without its becoming liable to that extent,

even though the title be taken in the name of the wife. Nor is the case different if the homestead was originally purchased by the wife on credit, and the husband comes in afterward and aids in making the payments. If we should hold the doctrine contended for by the appellant, we should afford an easy method for insolvent persons to acquire a homestead substantially with assets which should be used to pay their debts.

Precisely how much the judgment debtor in this case paid does not appear. The case as tried and decided does not seem to have been regarded as raising an issue distinctly upon that point. It will be remanded, therefore, for further evidence. The court will determine what proportion of the entire cost of the premises, as they stand improved, the judgment debtor paid, and a proportionate interest in the property, when ascertained, may be regarded as equitable assets, available to the plaintiffs as judgment creditors, and may be sold in satisfaction of their judgment. Code, § 3054.

REVERSED.

BECK, J.—I. I cannot fully concur in the foregoing opinion. The facts of the case, as disclosed by the testimony, I find to be as follows: The defendants are husband and wife. They had formerly resided in the State of Indiana, where the husband became involved in business, and made an assignment of his property for the benefit of his creditors. Subsequently they removed to this State. They were parents of a son who was employed by strangers, and was permitted by his parents to control his own wages. After the family removed to this State the son saved two hundred dollars. He desired to invest this money so as to procure a home for his mother, and upon consultation with his parents they undertook to carry out his wishes. The real estate in question, consisting of four lots, was purchased and the deed taken in the mother's name. The two hundred dollars of the son's money, which he gave to his mother, was paid upon the lots, and the

balance was secured by mortgage. The father transacted the business, but it was understood that the purchase was made for the wife. A house was built upon the lots, the husband superintending the business, at the cost from one thousand two hundred to one thousand five hundred dollars. When the house was completed there was an indebtedness upon the property amounting to one. thousand dollars, incurred partly, at least, in building this house, which was discharged by the proceeds of two of the lots, which were sold for nine hundred dollars. The property appears to have cost two thousand one hundred or two thousand four hundred dollars. Two hundred dollars, the first payment, was furnished by the son, nine hundred dollars by the sale of two of the lots, leaving one thousand or one thousand four hundred dollars which must have been furnished by the husband from the proceeds of his earnings.

II. The purchase of the property in the wife's name does not appear to have been made with an intention on the part of either husband or wife to defraud his creditors. He testifies that he supposed his indebtedness had all been paid by the assignment, as his assets exceeded the amounts he owed.

I conclude that the transaction under which the wife acquired the title of the property was not fraudulent in fact. The money earned by the son was his own, for he had been emancipated by the parents permitting him to appropriate his own earnings. This money he gave to his mother, and it constituted the first payment upon the lots. Surely, when that sum had been paid, the wife held a title free from fraud, or from any equitable claim of her husband's creditors. At the time she acquired the property the creditors could not have reached it. The circumstance that the husband transacted the business of the purchase for the wife does not make the property subject to his debts. These views are supported by *Shields v. Keys*, 24 Iowa, 298.

III. Did the acts of the husband done subsequently to the wife's acquisition of the title of the lots, in appropriating his

earnings to improving her property and paying the amount due upon the purchase, with her knowledge and consent, render the transaction fraudulent as to his creditors, and create an equity in their favor, as against the wife, to subject the property to their debts?

The husband, as will be discovered by our statement of facts, after the wife had acquired in good faith the title to the property, expended from one thousand to one thousand four hundred dollars upon the property, she expending the sum given her by her son, two hundred dollars, in the purchase of the lots, and the proceeds of the sale of two lots, nine hundred dollars, in payment of the purchase money and in the improvements. The testimony leads us to conclude that a part of the proceeds of the sale of the lots was expended in the improvements. The husband applied the amount he expended partly in payment for the improvements, and partly in payment of the amounts due upon the lots. The questions for us to determine are these—*First*, did the payments thus made by the husband render fraudulent the title of the wife, which, we have seen, was, before this, valid and free from fraud? *Second*, or did the payment by the husband for the improvements, or to discharge the indebtedness for the purchase money, create a trust in the wife, for the benefit of the husband's creditors, to the extent of the sums paid by him?

1. The answer to the first question is ready and complete. It is this: The original purchase was, as we have seen, without fraud. There is nothing to authorize the conclusion that there was any intention on the part of the husband to defeat his creditors. They supposed, when the expenditures were made, that his debts had all been paid, except a sum which he owed to her father, which, at the time, he was advised he would not be expected to pay. The transaction being *bona fide*, the title of the wife was not tainted with fraud.

2. The answer to the second question, which involves a principle of law, is quite as ready and quite as satisfactory.

The husband, though insolvent, was required by every principle of morals and law, as well as by his obligations to the State, to provide for the support of his wife and family. Surely it cannot be claimed that the creditors of a bankrupt have a trust interest in the articles of food and raiment which he purchases for the support of his wife and family. Their proper and comfortable support demands a shelter and a home, as it does food and raiment. Would the creditors have a trust interest in the lease of a house for a month or a year, the rent of which he has paid out of his earnings? Surely not. How can it be said, then, that such a trust exists in the home of the wife to the extent of the money paid therefor by the husband out of his earnings? While we would not relax the obligation resting upon a citizen to pay his debts, we cannot deny the equally weighty obligation, both moral and legal, which demands for the wife and family food, raiment, and a home, to be supplied by him as the head of a family. I conclude that no trust exists in favor of the creditors upon the property in question for the amount of the expenditures thereon by the husband.

This conclusion and the views above expressed are well supported in *Corning v. Fowler et al.*, 24 Iowa, 584, and the cases therein cited. See the following additional authorities to the same effect: *Robinson v. Huffman*, 15 B. Mon., 80; *Snow v. Paine*, 114 Mass., 520; *Humphrey v. Newman*, 51 Me., 40; *Peck v. Brummagim*, 31 Cal., 440.

IV. In *Snow v. Paine, supra*, another principle is applied to a case of this character, which defeats the claim of the creditors to a trust interest in the property. It is this: "A resulting trust is not created by implication of law in favor of one who pays part of the purchase money of real estate conveyed by another, unless such payment is made for some *specific or distinct* interest in the estate." *McGowan v. Mc-Gowan*, 14 Gray, 119. It is not pretended that the payments were intended to apply to any interest whatever in the prop-

·erty in question.  I reach the conclusion that the decree of the District Court is erroneous, and that plaintiff's petition ought to be

DISMISSED.