CROUP & SHAFER v. MORTON ET AL.

53 599
97 204
53 599
L112 598
112 599

1. **Homestead:** IN WIFE'S NAME: LIABILITY FOR HUSBAND'S DEBTS. A homestead standing in the name of the wife, but to the purchase and improvement of which the husband has contributed, may, to the extent of his contributions, be subjected to the payment of his debts contracted prior to its purchase. *Croup & Shafer v. Morton et ux.*, 49 Iowa, 16, followed, and distinguished from *Corning v. Fowler*, 24 Iowa, 584. BECK, J., *dissenting*.

*Appeal from Madison Circuit Court.*

TUESDAY, JUNE 8.

THIS action was commenced in the Madison District Court January 18, 1877. The petition alleges:

"1. That on October 8, 1868, the defendant L. M. Morton became indebted to plaintiffs in the sum of $905.19, and executed his note to them for said sum, due in sixty days.

"2. That on September 22, 1876, said note was merged in a judgment in the Madison District Court against said L. M. Morton, for $1,337.25 and costs.

"3. That on January 2, 1877, execution was issued on said judgment, which was returned January 18, 1877, 'no property found.'

"4. That on May 11, 1870, the defendant L. M. Morton purchased from W. H. Lewis lots 1 and 2 in block 3, west addition to Winterset, Iowa; that for the purpose of defrauding his creditors, and hindering and preventing his creditors, especially plaintiffs, in the collection of their debts, the said L. M. Morton procured the deed for said lots to be executed and delivered to his wife, the defendant Sallie M. Morton.

"5. That the defendant L. M. Morton, for the purpose of covering up his property and preventing plaintiffs from collecting their debt, has expended $3,000 in improving said lots.

"6. That Sallie M. Morton is not the real owner of said lots; that the same and the improvements thereon are the property of L. M. Morton, and paid for with his money." The plaintiffs pray that the lots and improvements be subjected to the payment of plaintiffs' judgment.

The defendant L. M. Morton filed his separate answer, containing:

1. A specific denial of each allegation of the 4th, 5th and 6th paragraphs of the petition.

2. Admitting the allegations of the 1st and 2d paragraphs of said petition and denying information as to the allegations of the 3d paragraph thereof.

The defendant Sallie M. Morton also filed her separate answer, stating:

1. A specific denial of each of the allegations of the 4th, 5th and 6th paragraphs of plaintiffs' petition.

2. That she was herself the real and *bona fide* purchaser

and owner of the property described in plaintiffs' petition; that she purchased and improved the same in good faith with her own means, and not with the means of L. M. Morton; that she has occupied and is still occupying said property with her family as her homestead.

At the September Term, 1877, the court entered a decree finding the equities with the plaintiffs, and ordering that the property described be subjected to the payment of plaintiffs' judgment. From this decree the defendant Sallie M. Morton appealed. Upon the appeal it was held that the property could be subjected to the payment of the plaintiffs' judgment to the extent only that the defendant L. M. Morton contributed to the acquisition of the property, and the cause was reversed and remanded for the determination of this question.

A *procedendo* having issued to the court below, the venue of the cause upon application of defendant was changed to the Madison Circuit Court. Thereupon the defendant Sallie M. Morton filed amendments to her answer, as follows:

"1. That the property in controversy was originally purchased with money given her by her son Albert.

"2. That all improvements thereon were paid for with money given her by her father, and the proceeds of the sale of the property originally purchased.

"3. That at the time of her purchase of lots 1 and 2, block 3, west addition to Winterset, Iowa, she had no knowledge or information whatever that her co-defendant, L. M. Morton, was indebted to plaintiffs in any sum whatever, and had no knowledge or information whatever that he was so indebted at the time of making the improvements thereon.

"4. That she specifically denies each allegation of plaintiffs' petition."

The defendant L. M. Morton also amended his answer, as follows:

"1. That in paying for the house and improvements on the lots in controversy he was by agreement paying off and discharging a debt justly due his father-in-law, and which by

his father-in-law had been given to his wife, his co-defendant, Sallie M. Morton; that it was only with the full understanding that he was discharging said indebtedness that he made said expenditures, and he would not have made the same had he not supposed that under and by agreement with his wife and father-in-law he was discharging said indebtedness.

"2. That the money expended by him on the property in controversy was the money of his wife, Sallie M. Morton."

The plaintiffs filed their reply, denying each material allegation of these amendments.

On March 20, 1879, P. P. Mast & Co. filed their petition of intervention, alleging that on September 15, 1877, as evidence of an indebtedness contracted prior to January 18, 1877, L. M. Morton executed and delivered to them his promissory note for $467.82, and ten per cent interest, due August 1, 1878; that to secure said note, defendants Sallie M. and L. M. Morton, September 15, 1877, executed and delivered to them a mortgage on lots 1 and 2, block 3, west addition to Winterset; that the real estate mortgaged as aforesaid to intervenors was, at the date of the mortgage, and ever since 1870 has been, the property of Sallie M. Morton; that L. M. Morton has not, and never had, any interest therein other than his dower right as husband of Sallie M. Morton; that plaintiffs are attempting to subject the property of Sallie M. Morton mortgaged to the intervenors as aforesaid, to the payment of a claim against L. M. Morton alone, and for which Sallie M. Morton is in no way liable, and are thereby jeopardizing intervenors' mortgage security to their great detriment. The intervenors pray for judgment on the note against L. M. Morton, a foreclosure of the mortgage against both defendants, and that intervenors' mortgage lien be declared senior to any claim or lien of plaintiffs.

The plaintiffs answered this petition of intervention alleging that said real estate never was the property of Sallie M. Morton; that she held the legal title only for the purpose of defrauding the creditors of L. M. Morton; that before the

execution of the mortgage to P. P. Mast & Co. the judgment of plaintiffs had been made a lien on said property by the District Court, and that intervenors have no interest in said real estate.

Upon the trial of the cause the court found that the entire cost of lots 1 and 2 as they now stand improved was $2,400, and that of that amount $1,176 was contributed by the defendant L. M. Morton, and $1,224 by the defendant Sallie M. Morton. The court established an equitable lien of the plaintiffs against said property to the extent of the interest of L. M. Morton therein. The court also rendered judgment in favor of the intervenors, P. P. Mast & Co., for $539.40, and decreed a foreclosure of the mortgage, but made their lien junior and inferior to the lien of plaintiffs. On the 26th of March, 1879, the defendants, and the intervenors P. P. Mast & Co., served notice of appeal. On the 15th day of July, 1879, the plaintiffs served notice of appeal.

*J. P. Steele*, for plaintiffs.

*McCaughan & Dabney*, for defendants

*Ruby & Wilkin*, for intervenors.

DAY, J.—I. Upon the trial of the cause no evidence whatever was introduced that the plaintiff had a judgment

1. HOMESTEAD: in wife's name: liability for husband's debts.

or any claim against the defendant L. M. Morton. The defendants insist that for this reason the judgment of the court below must be reversed. As the issues were originally made up, the defendant L. M. Morton admitted, and the defendant Sallie M. Morton did not deny, the existence of a judgment against L. M. Morton as alleged in the petition. Upon the former trial the court below held that the entire property should be subjected to the payment of plaintiff's judgment. Upon appeal we held that the property should be so subjected only to the extent that the defendant L. M. Morton contributed to the

acquisition of the property, and because the evidence did not furnish sufficient data for determining this question the cause was remanded for further evidence upon that point. In the opinion the following language is employed: "Precisely how much the judgment debtor in this case paid does not appear. The case as tried and decided does not seem to have been regarded as raising an issue distinctly upon that point. It will be remanded, therefore, for further evidence. The court will determine what proportion of the entire cost of the premises, as they stand improved, the judgment debtor paid, and a proportionate interest in the property, when ascertained, may be regarded as equitable assets, available to the plaintiffs as judgment creditors, and may be sold in satisfaction of their judgment." 49 Iowa, 16. It is evident from the opinion on the former appeal that the cause was not reversed *in toto* and remanded for trial *de novo*, but that the simple question to be determined was the amount which the defendant L. M. Morton contributed toward the purchase and improvement of the property. The fact that plaintiffs had a valid, subsisting judgment against L. M. Morton, and were entitled to subject his interest in the property thereto, was finally settled upon the former appeal, and no inquiry into that question was authorized by the opinion, or was proper.

The defendants rely solely upon the following clause of the *procedendo:* "Therefore, you are hereby commanded that * * * you proceed in the same manner as if no judgment had been rendered or appeal had been taken and prosecuted in this court, anything in the record or proceedings aforesaid certified to the contrary notwithstanding." The defendants ignore utterly the following statement contained in the *procedendo:* "And the said court, having duly examined the record and proceedings aforesaid in the premises, * * * did reverse the judgment and decree aforesaid, as rendered in the court below, and order further proceedings to be had in said court not inconsistent with the opinion of the Supreme Court, and in accord with their opinion filed."

It is very evident from the *procedendo*, taken together, that it authorizes the court below to proceed only in harmony with the opinion filed. If the plaintiffs had introduced evidence, and gone into an investigation of the question as to the existence of a judgment against L. M. Morton, they would now, perhaps, be estopped to deny that such question was properly before the court. But they did not do this. The record shows clearly that no evidence whatever was introduced as to the existence of a judgment in favor of plaintiffs. It is true that the defendant Sallie M. Morton did, in addition to the specific denials in her amended answer, allege " that she specifically denies each allegation of plaintiffs' petition." But this allegation could not, of itself, have the effect of calling upon or authorizing the court to investigate and adjudicate a matter already determined by a solemn adjudication both of the court below and of the Supreme Court, and not remanded for further consideration. We are clearly of opinion that, as between the plaintiffs and the defendants, the question of the existence of a judgment in favor of plaintiffs was not involved in the last trial, and that no evidence upon it was necessary or proper.

II.   The intervenors, P. P. Mast & Co., insist that whatever may be held as between the plaintiffs and the defendants, still, as between the plaintiffs and the intervenors, as there was no proof of a judgment against L. M. Morton, the lien of the intervenors must be preferred. To this it may be said:

*First*, That the petition of intervention raises no issue as to the existence of a judgment in favor of plaintiffs against L. M. Morton. The petition of intervention impliedly concedes the existence of a claim in favor of plaintiffs against L. M. Morton. The sole ground upon which intervenors ask relief is that the property which plaintiffs are seeking to subject to their claim is the property of Sallie M. Morton, and not of L. M. Morton. There is no suggestion nor intimation in the petition of intervention that plaintiffs did not have a claim under which they might subject the property of L. M. Morton.

*Second*, The original decree of the District Court declaring the judgment in favor of plaintiffs against the defendant L. M. Morton a lien upon the property in controversy was rendered on the 12th day of September, 1877. The mortgage to the intervenors was executed on the 15th day of September, 1877. The intervenors had constructive knowledge of this decree, and took their mortgage subject to it. This decree is final as to the intervenors until impeached for proper cause.

III. The defendants insist, however, that the evidence shows that the property in question was bought and improved entirely with money of the defendant Sallie M. Morton, and that the court erred in finding that the defendant L. M. Morton contributed $1,176 toward the acquisition thereof. The evidence shows that L. M. Morton owed his father-in-law about $1,500. The defendants claim that the father of Sallie M. Morton gave this claim to her, and that what the defendant L. M. Morton contributed to the improvement of the property was in good faith paid to Sallie M. Morton in satisfaction of this debt. We are fully satisfied that this position of the defendants is not sustained by the evidence. If any gift of this debt was made it was not until after the house upon the premises in question was erected. The evidence shows clearly that after the erection of the house the father of Sallie M. Morton endeavored to obtain payment of the debt. Further, if any gift was made there is as much reason for holding that it was made to L. M. Morton as that it was made to Sallie M. Morton.

IV. Counsel for the defendants have devoted considerable space in their argument to a criticism of the doctrine announced in the former opinion in this case, 49 Iowa, 16. It might be sufficient to say that the doctrines of that opinion are not now properly presented for review. But counsel seem to rely so confidently upon their position that we deem it not improper to devote a little space to this portion of their argument. Counsel insist that the opinion in this case is irreconcilably and hopelessly in conflict with *Corning v. Fowler*,

24 Iowa, 584. A little attention to the facts of the two cases will show that the position of counsel is without foundation. What then are the facts in the two cases? In *Corning v. Fowler* it is said in the opinion "that the land was purchased with the means of the wife * * * we conclude is not now seriously denied, and we think is fairly shown by the testimony * * * *. In substance the case is this: The wife owned the land; the husband is in debt; she expends some of her own means in improvements; he a much larger amount." The statement in the former opinion in this case shows the following facts: "Some time prior to the rendition of the judgment, but after the debt was contracted, the defendant L. M. Morton negotiated a purchase in the name of his wife of four lots in the town of Winterset, and a deed thereof was executed to her. The purchase price was nine hundred dollars. It does not appear that she had any money or other property at the time, and he was insolvent. * * *. The cash payment, two hundred dollars, was paid by a minor son. This payment was made by him for the benefit of his mother, and with the purpose * * * of procuring her a home. A house was built upon two of the lots at the cost of from one thousand two hundred to one thousand five hundred dollars. The other two lots were sold for nine hundred dollars * * * *. The nine hundred dollars received from the sale of lots was applied upon the indebtedness incurred in building the house. The balance due on the property, which appears to have been between one thousand and one thousand four hundred dollars, was paid by the husband."

The distinction between the two cases is obvious and important. In *Corning v. Fowler*, the land upon which improvements were made, partly with the means of the husband, was purchased solely with the means of the wife. In this case the wife contributed to the whole property but two hundred dollars. The original purchase price of the land was nine hundred dollars, and of this the wife paid two-ninths. It is claimed by the defendants that because of this payment she

should now be allowed to hold the entire property, with the improvements made thereon by the husband, exempt from the prior debts of the husband. Such a claim falls very far short of being supported by that perfection of reason which the law assumes, and has generally been conceded, to be. If the claim of Sallie M. Morton can be maintained, there is no reason why it could not as well be if she had contributed ten dollars, or but one dollar toward the original purchase of the lots. If this position be sustained, then, indeed, is the way for the defrauding of creditors made plain and easy. We are fully content with the doctrine announced in our former opinion.

V. The plaintiffs appeal from the holding of the court that the defendant L. M. Morton contributed only $1,176 to the acqusition of the property. We think it is very clear from all the evidence that Sallie M. Morton never directly contributed anything toward the purchase or improvement of the property, except the two hundred dollars paid for her by her son. The lots were purchased from W. H. Lewis. A payment of $200 was made at the time of the purchase, and a mortgage was given to secure the deferred payments. The evidence shows that this balance was paid in lumber by L. M. Morton, and the mortgage was canceled February 7, 1871. It is conceded by Sallie M. Morton that L. M. Morton furnished the means for the building of the house, but she claims that he did so in payment of a debt which he owed her father and which had been given to her. This claim, as we have seen, is not supported by the evidence. The evidence shows that the value of the two lots, with improvements thereon, is $2,400. The evidence also shows that the improvements cost about $1,500. Two of the lots were sold for $900, and it may be concluded from the evidence, we think, that the proceeds were used, either directly or indirectly, in the construction of the improvements. The balance must have been contributed by L. M. Morton. L. M. Morton contributed, therefore to the original purchase of the lots, $700, and to the erection of the improvements, $600. Sallie M. Morton's

interest in the property is eleven twenty-fourths, and L. M. Morton's interest is thirteen twenty-fourths. The plaintiffs are entitled to have their lien enforced against an undivided thirteen twenty-fourths of the property.

On defendants' and intervenors' appeal, the judgment is affirmed. On the plaintiff's appeal, the judgment is

MODIFIED AND AFFIRMED.

Mr. Justice BECK adheres to the views expressed by him in his dissenting opinion on the former appeal in this case.