ALFRED PRICE, Appellee, v. CARL SCHARPFF et al., Appellants.

No. 42773.

June 21, 1935.

E. C. McMahon and Edward D. Kelly, for appellants.

W. C. Shepard, for appellee.

KINTZINGER, J.—Carl Scharpff, one of the defendants, purchased a mercantile business from the plaintiff, Alfred Price, in 1913, giving his note for $1,700 in part payment thereof. This note was reduced to judgment in October, 1933, for a balance of $932 then due thereon.

In 1919, after incurring said indebtedness by the husband, the defendant Minnie Scharpff, his wife, purchased two lots and paid $600 therefor out of her own funds, taking title thereto in her own name. Thereafter, in 1920 or 1921, she had a dwelling house constructed thereon, at a cost of about $9,000. When the building was completed, in 1921, $4,300 was paid thereon in cash, and $700 was taken out in trade by the contractor at her husband's store. This left a balance of $4,000 which was represented by a mortgage given on the homestead; $2,000 of this mortgage was paid off in 1926, $1,200 in 1931, leaving a balance of $800 which was paid from cash received on a paid-up insurance policy on the husband's life, payable to his wife.

The lower court found that the defendant, Carl Scharpff,

contributed, toward the cost of the homestead, the $700 taken out in trade by the contractor in the husband's store in 1921, and the final payment of $800 received on the insurance policy. As such amounts exceeded the amount of plaintiff's judgment, a decree was entered establishing a lien against the homestead therefor.

No claim is made either in the pleadings or in the proof: (1) that the defendant, Carl Scharpff, was insolvent at the time the home was constructed; (2) that any fraud was perpetrated upon his creditors; (3) that any trust or equitable interest in said property resulted in favor of the husband; or (4) that there was any agreement or understanding that the husband was to have any interest in the homestead by reason of any payments claimed to have been made by him.

The only ground upon which plaintiff asks to subject the homestead to the payment of plaintiff's debt is that most of the money entering into the cost of the home belonged to and was contributed by the husband.

Appellants contend that such money belonged to the wife when the payments were made, and that such funds were acquired and accumulated by the saving of her personal earnings, and moneys given her by her husband as a regular daily allowance through a long period of years.

The defendants were frugal and thrifty people. The husband was in the employ of plaintiff for 14 years before he purchased the latter's store in 1913. That during all of that time he was also engaged in buying and selling chickens and eggs throughout the country. That all of the profits, made by him during these years, were given to and saved by the wife as her own separate property. The evidence also shows without dispute that for a period of 32 years of this married life, the wife kept and worked a garden in which she had hotbeds, from the products of which she personally saved over $100 a year; that she also owned some cows and chickens, from which she sold butter, cream, and eggs, the proceeds of which she saved. That about 1914 her husband sold a farm in Minnesota at a profit of $1,500 which he gave to his wife. At that time he was doing a profitable business and was perfectly solvent and well able so to do. The evidence also shows without dispute that during all these years she worked hard from early morning until late at night, and that during the 19 years her husband was operat-

ing the store, she also worked there. The evidence also shows without dispute that for many years after the husband purchased the store in question, he did a large and profitable business; that during all the time she worked in the store, her husband gave her an allowance of about $2 a day which she also saved.

While there is some evidence of admissions made by the husband that he superintended the construction of the home, and that all moneys paid the contractor were his, this evidence was received solely for the purpose of showing admissions against the husband, and is not competent or binding against the wife.

The evidence, however, fairly tends to show that all such moneys, handled by the husband for the construction of the home, were received by him out of the savings accumulated by the wife, over a long period of years, and that all moneys so handled by him were for and on behalf of his wife.

The record clearly shows that during all of the time the wife was accumulating and saving this money, the husband was perfectly solvent and doing a large and prosperous business, and that the money was not given to or received by her with any fraudulent intent or purpose.

Although the family relationship between a grantor and grantee requires close scrutiny on the evidence of fraud, the relationship in itself does not establish fraud. Pike v. Coon, 217 Iowa 1068, 252 N. W. 888; Erusha v. Wisnewski, 207 Iowa 1187, 224 N. W. 517. In Pike v. Coon, supra, loc. cit. 1071, we said:

"While the relationship may be closely scrutinized and although it may be considered as a circumstance tending to establish fraud, nevertheless, other evidence of the fraud must be introduced before such relationship in and of itself can be considered as establishing fraud."

It is also the well-settled rule of law in this state that the burden is upon the plaintiff to both plead and prove fraud, and that the party charged participated therein. Crenshaw v. Halvorson, 183 Iowa 148, 165 N. W. 360; LeSell v. Mendenhall, 186 Iowa 980, 171 N. W. 152; Thompson v. Zuckmayer, 94 N. W. 476,

In this action, there was no evidence tending to show that the wife had any knowledge of the existence of the husband's indebtedness to the plaintiff, or that he was insolvent while she was saving this money. Under such circumstances fraud will

not be presumed. Sheffield Milling Co. v. Heitzman, 192 Iowa 1288, 184 N. W. 631; Henderson v. Ball, 193 Iowa 812, 186 N. W. 668; Stephenson & Peterson v. Svenson, 187 Iowa 802, 174 N. W. 570.

It is the well-settled rule of law in this state that a debtor has a right to transfer property or make gifts to his wife at a time when he is perfectly solvent and retains a sufficient amount to meet all of his debts. Erusha v. Wisnewski, 207 Iowa 1187, 224 N. W. 517; Lietz v. Grieme, 212 Iowa 1305, 236 N. W. 395; Bartlett v. Webber, 218 Iowa 632, 252 N. W. 892.

It is our conclusion, without considering the evidence in further detail, that the greater part, if not all the money, used in constructing the homestead was paid out of moneys belonging to the wife.

██ Appellee contends that the $700 traded out in part payment of the home, and the $800 received upon the insurance policy, in which the wife was beneficiary, belonged to the hus-, band. It is our conclusion that the only money, if any, that could have been contributed by the husband toward the construction of the homestead was the $1,500 made up by these two amounts. Even this is doubtful because the husband was perfectly solvent when the $700 was used, and when the premiums on the insurance policy were paid. Under such conditions he could make a valid gift thereof to his wife if he so desired.

The lower court, however, found that at least these two amounts were furnished by the husband toward the cost of the homestead. If this be conceded, could plaintiff subject the wife's homestead to the payment of his judgment to that extent?

It is the rule of law in this state that where a homestead is constructed upon lots owned by the wife, and the greater part of its cost is voluntarily paid by the husband without any intention of having or receiving an interest in the homestead, it is exempt from execution for debts incurred by the husband prior to its acquisition. Corning v. Fowler, 24 Iowa 584; Shields v. Keys, 24 Iowa 298; Ebersole v. Moot, 112 Iowa 596, 84 N. W. 696; Shircliffe v. Casebeer, 122 Iowa 618, 98 N. W. 486.

In the case of Corning v. Fowler, 24 Iowa 584, the husband was insolvent when certain lots were purchased by him for his wife out of her funds, and that such insolvency existed when the homestead was being constructed. It was there held that although the husband furnished the greater part of the money

used in its construction, the wife's homestead could not be subjected to the payment of the husband's debts to the extent of moneys voluntarily contributed by him toward its construction. In that case, this court said:

"The wife owns the land; the husband is in debt; she expends some of her own means in improvements; *he a much larger amount*; she is guilty of no collusion, has no fraudulent purpose, but has knowledge of the improvements made by him, and *makes no objections to his thus expending his money*. Under such circumstances can the creditors enforce a lien against the lands of the wife to the extent of the money thus invested by the husband? It seems to us not. ˙ If the case stood as a voluntary gift or conveyance of property by the husband to the wife, * * * made for the purpose of defrauding his creditors, equity could well follow such property into the hands of the donee or grantee. * * * But this rule can have no application where the husband makes with his own means improvements on the lands of the wife, without any contract that he acquired an interest thereby in the realty, or that she was to be liable or accountable to him for the value thereof. The expenditure was voluntary—not under any contract—and it would place at the disposal of an insolvent and spendthrift husband the entire real property of the wife, if his creditors could follow the means expended by him thus voluntarily thereon, and enforce their claims or liens to the extent of such expenditure. The wife cannot thus, without her consent, be made the trustee of the husband, holding her own lands in trust for the payment of liens in the creation of which she had no part. * * * To recognize the existence of such a lien from the fact that he, while in debt, has added to the value of her lands by expending his means thereon, would be going further than any case brought to our attention, and it seems to us would be most dangerous in practice, and in violation of the rights of the wife."

The facts in the instant case are much stronger in favor of the wife than those in the Corning case. It is not claimed or shown here that any moneys were contributed by the husband toward the cost of the homestead while he was insolvent, or with any intention to defraud his creditors. In fact, the contrary appears.

Appellee cites some cases supporting his contention that

where a debtor expends money in improvements on his wife's real estate, with her consent, the husband has an interest in the homestead to the extent of his contributions, and that creditors can subject that interest to the payment of their claims. Croup & Schafer v. Morton, 49 Iowa 16; 53 Iowa 599, 5 N. W. 1093; and Hamill & Co. v. Henry, 69 Iowa 752, 28 N. W. 32.

These and similar cases are distinguishable from the case at bar, because in those cases, the greater part of the purchase money of the land was furnished by the husband, and he was insolvent when the money was advanced. In Croup & Schafer v. Morton, 49 Iowa 16, loc. cit. 19, this court distinguishes that case from the Corning case in the following language:

"In Corning v. Fowler, * * * an insolvent husband had built a house upon his wife's land. The plaintiff was a judgment creditor of the husband, and brought the action to establish a lien upon the land. *The petition was dismissed, and we think very properly.* The court says: 'The wife cannot without her consent be made the trustee of her husband, holding her land in trust for the payment of liens in the creation of which she had no part.' It will be seen that the establishment of a lien as sought would have given the creditor a right in the property not co-ordinate with that of the wife, but in some sense paramount. * * * This could hardly have been allowed, even if the house had been built with the wife's consent."

The cases relied on by appellee are also distinguishable from this case, because the record therein shows that the husband furnished the money for the purchase of the real estate, and for the expenditures made thereon, and was insolvent when the money was advanced by him. In those cases the question of fraud was also clearly raised by the pleadings and by the proof. In the case at bar, the lots were purchased with the wife's money during a time when her husband was perfectly solvent, and no fraud is alleged or proven.

Under the ruling announced in Corning v. Fowler, supra, which has never been departed from in this state, plaintiff's claim cannot be established against a homestead belonging to the wife. We are not inclined to depart from the rule announced therein.

It is our conclusion that the facts in this case did not warrant a subjection of the wife's homestead to the payment of

any part of plaintiff's judgment against her husband. The judgment of the lower court is therefore, hereby reversed, and the same is remanded for a decree in harmony herewith.—Reversed and remanded.

ANDERSON, C. J., and all Justices concur.