B. F. CRENSHAW, Trustee, Appellant, v. H. A. HALVORSON, Trustee, Appellee.

**FRAUDULENT CONVEYANCES:** Transfers Invalid—Insolvency.
1   Insolvency defined as such a condition of a person's affairs that the aggregate of his property is not, at a fair valuation, sufficient to pay his debts.

**FRAUDULENT CONVEYANCES:** Confidential Relations—Husband
2   and Wife—Indebtedness. A conveyance from husband to wife, on reasonably adequate consideration, in good-faith payment of a bona-fide debt from husband to wife, is not fraudulent, even though the husband was insolvent, and even though the conveyance will hinder or prevent the husband's creditors from collecting their claims.

**FRAUDULENT CONVEYANCES:** Consideration—Transaction be-
3   tween Husband and Wife. The bona-fide existence of a debt between husband and wife is sufficiently shown by evidence that the wife actually did deliver her property to the husband, and that the conduct and language attending the delivery were such as to exclude the claim of gift, and to fairly give rise to the inference that both understood that the husband would repay the wife.

*Appeal from Iowa District Court.*—R. P. HOWELL, Judge.

DECEMBER 11, 1917.

REHEARING DENIED MARCH 18, 1918.

SUIT in equity to set aside the conveyance of a forty-acre tract of land, as having been made in fraud of creditors. The petition was dismissed, and plaintiff appeals.— *Affirmed.*

*B. L. Wick* and *Baldwin & Baldwin,* for appellant.

*Stapleton & Stapleton* and *W. E. Wallace,* for appellee.

WEAVER, J.—The plaintiff, as the trustee of the bankrupt estate of Patrick J. Giblin, brings this suit in equity to subject to the payment of the debts of such estate a certain forty-acre tract of land, title to which is held by the bankrupt's wife, Ella M. Giblin. Cases of this type are of very frequent appearance in the courts, and the law governing them is well settled. As a rule, these actions turn largely, if not entirely, upon certain controverted matters of fact; and in this respect, the case before us furnishes no exception. It sufficiently appears that, in the year 1912, or 1913, Patrick J. Giblin and his brother, Mike Giblin, held some share or equity in certain property belonging to the estate of their deceased father. At the same time, Mike Giblin held a contract for the purchase of a forty-acre tract of land from one George Moore. The land was encumbered by mortgage, and Mike had made only a small initial payment on the contract. Patrick and Mike agreed upon an exchange, by which Mike took over his brother's interest in the estate property and transferred his contract with Moore to Ella M. Giblin, Patrick's wife. Later, Moore conveyed the title to her. In 1915, Patrick went into bankruptcy, and the plaintiff herein became the trustee of the estate. It is the theory of plaintiff that the taking of the title to the forty acres in the name of Ella M. Giblin was in the nature of a voluntary conveyance in fraud of creditors, and that the land is equitably subject to the payment of the claims of her husband's creditors. This is denied by the defendants. On trial to the court, it was found that the alleged fraud had

not been established by the evidence, and the petition was dismissed.

The testimony is very largely given over

1. FRAUDULENT CONVEYANCES: transfers invalid: insolvency.

to the financial transactions of Patrick J. Giblin, from the time of his marriage until he went into bankruptcy, some fifteen years later, and especially to the question of his solvency at the time this particular tract of land was conveyed by Moore to Ella M. Giblin. We shall not attempt to recite the evidence, or to determine with any degree of certainty whether Patrick was, in fact, solvent at that date, because the right of his wife and the validity of her title do not necessarily depend thereon. It is quite evident that Patrick was then quite heavily indebted, but he also had considerable property in his own right; and, for two or more years thereafter, he continued actively in business, buying and selling property, paying some debts and contracting others; and, taking the evidence as a whole, it is fairly inferable that, in 1912 and 1913, he had a margin of several thousand dollars in the value of his property over and above his debts; though, had his creditors then united in pressing their demands and forcing him to liquidate, he might, in that sense of the word, have been found insolvent. Insolvency is a word of somewhat variable meaning. When applied to a person engaged in business as a merchant or trader, it is ordinarily defined as inability to meet one's obligations as they mature, in the ordinary course of business; but, as used generally, and as accepted generally in common speech, it means rather such a condition of a person's affairs that the aggregate of his property is not, at a fair valuation, sufficient in amount to pay his debts. Indeed, such is the statutory definition in the Bankruptcy Act itself. See 30 U. S. Stat. at Large 544, Sec. 1. That Patrick J. Giblin was insolvent, in this sense of the word, at the date of the transaction in question, is not, we think, established by the evi-

dence. But, as we have already suggested, the fact as to whether he was then solvent or insolvent is not decisive of the vital question whether the conveyance was in fraud of creditors. If the husband was, in fact, honestly indebted to his wife, and the conveyance was made, received, and accepted in good faith, in payment or satisfaction of such debt, and the consideration was not grossly inadequate, it was not fraudulent; and it will not be set aside nor the property be subjected to the payment of the husband's other creditors, even though it operates to hinder or prevent the collection of their claims. *First Nat. Bank of Wilmot v. Eichmeier,* 153 Iowa 154, 163; *Muir v. Miller,* 103 Iowa 127; *Fowler v. McDonnell,* 100 Iowa 536; *Sprague, Warner & Co. v. Benson,* 101 Iowa 678; *Mahaska County v. Whitsell,* 133 Iowa 335. The evidence shows, without substantial dispute, that Ella M. Giblin did furnish her husband $800, soon after her marriage, and that she also brought to the farm live stock, which, with the increase, the husband sold and made use of in his business. It also shows, we think, that this was done with the mutual understanding that the wife should be reimbursed for such money and property. True, the showing of this understanding is, in some respects, vague, and it does not appear that any definite time was fixed for the payment; but business dealings between husband and wife are not apt to be expressed in exact and formal terms. It is enough if their conduct and language with respect to the subject-matter be such as to raise the fair inference that the money or property was not received by the husband as a mere gift or gratuity, but with the expectation on the part of both that, at some time, he will account or make payment therefor to her. It is shown that they did have an accounting, and made estimates of the amount justly due

2. FRAUDULENT CONVEYANCES: confidential relations: husband and wife: indebtedness.

3. FRAUDULENT CONVEYANCES: consideration: transaction between husband and wife.

the wife; and that this land was deeded to her in payment. The margin in the land over its encumbrances was small, and the consideration paid by her was not inadequate. It is true that the courts will carefully scrutinize transactions of this nature between husband and wife, and if such conveyance is found to be tainted with fraud, it will unhesitatingly be set aside. But there is no presumption of fraud because of the family relationship of the parties. The burden is at all times upon the party attacking the conveyance to prove fraud. The trial court found that the plaintiff had not sustained this burden by the requisite quantum of proof, and with this conclusion we are disposed to agree. The decree appealed from is, therefore,—*Affirmed.*

GAYNOR, C. J., PRESTON and STEVENS, JJ., concur.