J. R. RATEKIN, Appellee, v. DROGE ELEVATOR COMPANY SEED CORN DEPARTMENT et al., Appellees; RATEKIN SEED HOUSE, Cross-petitioner, Appellant.

FRAUDULENT CONVEYANCES: Right to Set Aside. A creditor of 1    a *nonresident* debtor may maintain an equitable action to set aside a transfer of property by said debtor as soon as such creditor obtains a *lien* on such transferred property, i. e., by garnishment. *It is not necessary that the creditor first reduce his claim to judgment.*

FRAUDULENT CONVEYANCES: Necessary Showing. A creditor who 2    asks for the cancellation of an alleged fraudulent conveyance by his debtor must show:  (1) That he is such creditor;  (2) that the conveyance was without consideration, or with intent to defraud the debtor's creditors; and  (3) that the debtor was insolvent when he made the conveyance.

*Appeal from Pottawattamie District Court.*—O. D. WHEELER, Judge.

DECEMBER 31, 1920.

SUIT for an accounting of partnership assets and earnings. Ratekin Seed House, Incorporated, filed cross-petition, praying that the portion apparently belonging to plaintiff be decreed the property of J. W. Ratekin, and subjected to the payment of any judgment cross-petitioners may recover against said J. W.

Ratekin. The district court found $3,485.15 to be plaintiff's share of the partnership funds, and dismissed the cross-petition. The latter appeals.—*Affirmed.*

*Ferguson, Barnes & Ferguson,* for appellant.

*Tinley, Mitchell, Pryor & Ross* and *Kimball, Peterson & Smith,* for appellees.

LADD, J.—On January 11, 1918, Droge Elevator Company, J. W. Ratekin, and D. W. Thayer entered into a copartnership, known as the Droge Elevator Company, Seed Corn Department, with the object of engaging in buying and selling seed corn. The Droge Elevator Company paid in $200, and Ratekin and Thayer each $100, and the profits of the business were to be divided in the same ratio. The business was to be closed May 15, 1918, but was not concluded until June 22d following. On March 2, 1918, J. W. Ratekin executed an assignment to his father, the plaintiff, of all the profits which had been or might be earned by said copartnership, reciting therein a consideration of $2,050 advanced by plaintiff to him, and an additional existing indebtedness of $4,640. This suit was brought for an accounting of the profits earned by said partnership, and resulted in a finding that $3,485.15 was plaintiff's share. The Ratekin Seed House, Incorporated, filed a cross-petition, alleging that it had begun an action in the same court, prior to the commencement of the suit first mentioned, against J. W. Ratekin, and had garnished said copartnership and the members thereof as debtors of said J. W. Ratekin; that the latter had been in its employment for several years, during which time he had appropriated to his own use "large sums of money belonging to said corporation;" that J. W. Ratekin was insolvent, and a nonresident, and had no property in the state subject to execution; that the action was brought to aid the garnishment proceedings; that plaintiff, J. R. Ratekin, was aware of the things alleged, at the time of the alleged assignment, and obtained the same without consideration, and in fraud of the creditors of J. W. Ratekin. The relief sought was "that the share found owing plaintiff be subjected to the payment of any judgment the

Ratekin Seed House, Incorporated, may recover against J. W. Ratekin or his property.'' On hearing, the cross-petition was dismissed; and this ruling only is questioned.

A few of the details may as well be added. The copartnership was formed on January 11, 1918. The Droge Elevator Company undertook to advance $200, and Thayer and J. W. Ratekin, $100 each. Each so did, and they were to share profits and losses in like proportion. Thayer was to devote his time to the interests of the company, and receive $100 per month, but this was to be deducted from his share of the profits. Ratekin and the Droge Elevator Company were each to furnish certain specified equipment, and expenses were to be paid by the firm. Ratekin and Thayer entered into an agreement, whereby the former was to receive 60 per cent and the latter 40 per cent of one half of the profits of the business. On March 2, 1918, J. W. Ratekin executed a written assignment of his share of the profits which were derived from said partnership, to the plaintiff, J. R. Ratekin. The latter had entered into the employment of the copartnership at a salary of $100 per month, January 29th previous, and continued in its service until June 22d of the same year. The action of the Ratekin Seed House, Incorporated, was begun on May 11, 1918.

I. Contrary to appellee's contention, the evidence conclusively proved J. W. Ratekin a resident of Nebraska. He being a nonresident, it was not necessary for cross-petitioner to reduce its claim to judgment, before questioning the *bona fides* of his assignment of profits to his father, J. R. Ratekin. *Taylor v. Branscombe,* 74 Iowa 534; *Corn Exchange Bank v. Applegate,* 91 Iowa 411; *Gates v. McClenahan,* 124 Iowa 593; *First Nat. Bank v. Eichmeier,* 153 Iowa 154. All essential as a basis for assailing the purported transfer was that cross-petitioner have a lien on the property assigned. *Mickel v. Walraven,* 92 Iowa 423; *Davidson v. Dockery,* 179 Mo. 687 (78 S. W. 624); *Cocks v. Varney,* 45 N. J. Eq. 72 (17 Atl. 108); *Dawson v. Sims,* 14 Ore. 561 (13 Pac. 506). This was obtained by the garnishment proceedings, under the writ of attachment issued in aid of the action by Ratekin Seed House, Incorporated, v. J. W. Ratekin.

1. FRAUDULENT CONVEYANCES: right to set aside.

II. The trial court found that J. R. Ratekin was entitled

to $3,485.15, under the assignment; and, should this be found to have been executed without consideration, or in fraud of creditors, the amount must be held under garnishment, to satisfy any judgment the cross-petitioner may recover against the assignor.

**2. FRAUDULENT CONVEYANCES: necessary showing.**

The assignee relied solely on the presumption which the law raises as to there having been a consideration; but the evidence, as we think, clearly overcame such presumption, and left no doubt as to the voluntary character of the assignment. But the record is not such as to justify an inference that the assignment was designed to defraud creditors. It tends rather to show that it was made for another purpose. If the assignor was in debt to anyone, even to the cross-petitioner, or had a purpose to defraud his creditors, the abstract contains no evidence of either fact. Thayer testified that J. W. Ratekin told him that "he was interested over in Omaha in the Mississippi Valley Seed Company, and they were objecting to him being across the river with this concern; and, in order to set himself right with the Mississippi Valley Seed Company, he wanted the paper to show that he wasn't interested here at all. * * * The actual ownership of the property was not to change. It was merely a paper to show the other side of the river that he was out." Droge swore that:

"He stated he was interested in the Mississippi Valley Seed Company, of Omaha, and there would be more or less hard feelings on account of his having taken an interest in the Council Bluffs Seed Corn Company, and, to clear his skirts, he wanted to give this transfer to his father."

J. R. Ratekin denied that he was present at the conversation with Droge and swore that the interview was with him, and that the conversations recited did not occur. The witnesses, however, were not interested; and, as the explanation is the only reasonable one presented by the record, we are inclined to lend credit to their testimony. Nor was there any evidence of the alleged insolvency of J. W. Ratekin. If he was not insolvent, and no *mala fides* in the transfer appears, we know of no reason for interfering. Surely, a person acting in good faith,—and that, in the absence of any showing to the contrary, is to be assumed,—and not insolvent, may do with his property as he

pleases; and, if J. W. Ratekin gave the profits of this venture to his father, the cross-petitioner is not in a situation to complain. Citation of authority is unnecessary. The amount claimed by cross-petitioner to be owing it is not alleged in the pleadings, nor was the existence of any indebtedness proven. Had there been such showing, doubtless J. R. Ratekin must have shown that his son owned other property, out of which the indebtedness might have been made, in order to avail himself of property assigned. But there was no proof of anything owed to cross-petitioner by J. W. Ratekin, or when incurred. The dismissal of the cross-petition has our approval.—*Affirmed.*

WEAVER, C. J., EVANS and ARTHUR, JJ., concur.