FARMERS LOAN & TRUST COMPANY, Appellant, v. ADAM SCHEETZ et al., Appellees.

FIRST NATIONAL BANK OF IOWA CITY, Appellant, v. ADAM SCHEETZ et al., Appellees.

**FRAUD:** Acts Constituting—Preferring Creditor. A debtor may prefer a creditor, if he acts without fraudulent intent.

*Appeal from Johnson District Court.*—R. G. POPHAM, Judge.

OCTOBER 23, 1923.

SUIT in equity, in the nature of a creditor's bill, to set aside a deed of land and to subject property to payment of judgments. On trial to the court, the petition was dismissed, and plaintiff appeals.—*Affirmed.*

*Dutcher & McClain* and *J. M. Otto,* for appellant.

*W. J. Baldwin* and *Henry Negus,* for appellees.

WEAVER, J.—The two cases mentioned in the caption involve substantially similar controversies, and have been consolidated for the purposes of trial.

On February 14, 1921, the first named plaintiff recovered judgment in the trial court against Adam Scheetz and Nick Scheetz for $9,192.12; and the same day, the other named plaintiff procured judgment against the same defendants for $10,205.36. Executions were issued on these judgments, and returned unsatisfied, and they are still unpaid. Prior to December 4, 1920, the defendant Nick Scheetz was the owner of a farm of 146 acres in Johnson County. He was 67 years of age, and living with him and assisting him in carrying on the farm was his bachelor son George, 40 years old. Another son, Adam, a married man, was living on a farm of his own. Adam was heavily indebted to numerous creditors, and on much of this indebtedness, the father, Nick Scheetz, became surety; and it seems very probable that his property was insufficient to satisfy all the outstanding claims against him. On December 4, 1920, Nick Scheetz deeded his land to George, at the alleged price of $185 per acre, and also sold him his live stock, for an aggregate price of $1,875. According to appellees' theory, the consideration for this transfer was, in part, a debt owed by Nick to George for service by the son after he became of age, and for the son's assumption of payment of a debt to the Johnson County Savings Bank, which indebtedness he did, in fact, secure by executing a mortgage on the land. In further consideration, George, through his attorney, Mr. Baldwin, obtained from the defendant Stevens a loan of $10,000, which was applied to the payment of claims held by Baldwin for collection against Nick. These ar-

rangements were consummated on or about December 4, 1920. Six days later, the plaintiffs herein sued out a writ of attachment, and levied it on the land. In this action, the appellants allege that the conveyance from Nick to George and the mortgages executed in connection therewith are collusive and fraudulent, and made to cheat, wrong, and defraud the creditors of said parties; and they ask a decree setting the same aside, and subjecting the property to the payment of their judgments. On hearing the evidence, the trial court found the equities to be with the defendants, and dismissed the bill.

The case so presented is one of fact, involving little or no dispute over the applicable law. The record of the evidence is too voluminous to justify us in attempting its discussion or recitation in detail. There is but little showing in the way of direct denial of the matters in defense. It is urged, however, that such showing is inherently unreasonable, if not incredible, and is sufficient in itself to stamp the transaction as fraudulent. This alleged character is said to be shown by the family relationship between the parties, and by the inadequate consideration given for the conveyance of the land.

It is true that the close or intimate relation of the parties is a proper subject of scrutiny in a proceeding of this nature, and the courts will not permit it to be perverted into a screen for fraud; but it is equally true that a litigant will not, on that account, be denied vindication of his personal or property rights. Fraud will not be presumed from the mere showing of a tie of blood or affinity between the parties to the transaction in question. The one item of the testimony of George Scheetz which is most questioned by counsel in argument is that, when he arrived at his majority, his father agreed that, if he (the son) would remain at home and work, he would pay him the highest wages; and that he did stay, and served his father thereafter until the deed was made; and that such service was worth $35 per month. It may be that in these latter days such an arrangement would be somewhat unusual, but there is nothing unnatural or impossible in it. It is not denied that George did remain and did serve, nor is the sworn value of such service challenged. The fact that George did assume the payment of a very considerable indebtedness, and did in fact make himself personally liable therefor, and

did pledge this same property to its payment, is shown without dispute. Nor can we say from the record that there is any marked inadequacy in the consideration of the conveyance. As is usually the case upon questions of values, the testimony is not unanimous, and the conclusion of the trial court is fairly supported. It is true that the effect of the transaction in controversy is to give to certain creditors a preference over others; but that result does not, of itself, establish fraud. A failing debtor may lawfully exhaust his property to secure or pay some of his creditors, leaving others unprotected, provided only that his purpose in so doing is not tainted with intent to hinder or delay the creditors left unsecured. The fraud, if any, does not consist in the sale or disposal of his property, simply because it has the effect to hinder or delay some creditors, but in the fact, if it be shown, that it was intended for that purpose. *Mahaska County v. Whitsel*, 133 Iowa 335; *State Bank v. Wolford*, 178 Iowa 89; *First Nat. Bank v. Eichmeier*, 153 Iowa 154, 163; *Crenshaw v. Halvorson*, 183 Iowa 148, 151; *Swanson Auto Co. v. Stone*, 187 Iowa 309, 320; *State Bank v. Schutt*, 174 Iowa 583, 587.

It is not without some significance to note that practically all the testimony in the case, outside of the matter of land values, was given by the defendants, who were called to the witness stand by plaintiffs. This evidence was, of course, not conclusive upon plaintiffs, who could rightfully contradict the truth thereof, if so disposed; but, as we said in the somewhat similar case of *Harvey v. Phillips*, 193 Iowa 231, 233, plaintiffs "to a certain extent vouched for their truthfulness," and "under such circumstances, we may not construe their evidence only as it is against defendants, but must construe it as well in their favor. In other words, the evidence must be taken all together."

We regard it as quite clear that, taking the entire record, the trial court properly held that the charge of fraud is without sufficient support; and the decree below is—*Affirmed.*

PRESTON, C. J., STEVENS and DE GRAFF, JJ., concur.