C. L. BARKS, Trustee, Appellant, v. L. KLEYNE, Appellee.

**FRAUDULENT CONVEYANCES:** Transfers Invalid—Intermingled
1 **Legal and Illegal Intent—Effect.** A deed executed by an insolvent debtor to one of his creditors is void when executed with the mutual dual intent on the part of the debtor grantor and creditor grantee (1) to secure a bona-fide indebtedness owed by the debtor to the creditor, and (2) to enable the insolvent debtor secretly to cover up a reserved interest in the property, and thereby place such reserved interest beyond the reach of his other creditors.

**FRAUDULENT CONVEYANCES:** Evidence—Burden of Proof. The
2 burden of proof is on a plaintiff who alleges that a conveyance which was admittedly given to secure a bona-fide indebtedness was invalid because of the fraudulent intent' on the part of the grantee to hinder, delay, and defraud the grantor's other creditors.

**FRAUDULENT CONVEYANCES:** Evidence—Similar Transactions.
3 On the issue whether a conveyance by a debtor is fraudulent, other like transactions may be admissible on the question of intent.

**FRAUDULENT CONVEYANCES:** Transfers Invalid—Relationship of
4 **Parties.** Blood relationship between the grantor and grantee in a conveyance may have very material bearing on the issue whether the conveyance is fraudulent.

**PLEADING:** Sufficiency—Failure to Question in Trial Court. The ob-
5 jection that a petition by a trustee in bankruptcy to set aside a conveyance by the insolvent as fraudulent (on which issue was duly joined) fails to allege that claims were *proved and allowed against the bankrupt estate* must be raised in some proper manner in the trial court.

*Appeal from O'Brien District Court.*—C. C. BRADLEY, Judge.

OCTOBER 24, 1924.

ACTION in equity, to set aside a deed alleged to be fraudulent. Cause determined in favor of the defendant, and judgment entered dismissing plaintiff's petition at his costs. Plaintiff appeals.—*Reversed.*

*G. T. Hatley* and *James B. Lindsay,* for appellant.

*Klay & Klay,* for appellee.

DE GRAFF, J.—This action was instituted March 9, 1922, by C. L. Barks, the duly elected, qualified, and acting trustee in the matter of Huibrecht C. Kleyne, bankrupt, against L.

1. FRAUDULENT CONVEYANCES: transfers invalid: intermingled legal and illegal intent: effect.

Kleyne, father of bankrupt, to whom an alleged fraudulent warranty deed was executed and delivered by the bankrupt on February 7, 1921. The gist of the action is found in the language of Paragraph 4 of plaintiff's petition, to wit:

"That, at the time of the execution and delivery of said deed, the said Huibrecht C. Kleyne was insolvent and bankrupt, and unable to pay his debts in the usual course of business, and that, by the execution and delivery of said deed and the execution of other transfers of property at or about the same date as said warranty deed, and as a part of a general scheme and plan of transferring all of the property of the said Huibrecht C. Kleyne beyond the reach of his creditors, he, the said Huibrecht C. Kleyne, deprived himself of all of his assets, and thereby rendered himself totally insolvent and bankrupt, and unable to pay or secure his creditors."

It is shown that the assets in the estate of the bankrupt are insufficient to satisfy the valid claims filed against the estate. It is admitted that, at the time of the filing of the petition in bankruptcy, Huibrecht C. Kleyne was insolvent, and it is further conceded that the plaintiff established the insolvency of the bankrupt at the time of the execution of the

deed in question. This case, therefore, calls for the application of well defined legal principles to the record facts. To assert successfully a demand by a creditor to set aside a conveyance given by his debtor in payment of or as security for a bona-fide debt, it must be established by clear and satisfactory proof, not only the insolvency of the debtor at the time of the execution of the conveyance, and that the rights of other creditors were thereby impaired by the conveyance, but also (1) the intent of the debtor to hinder, delay, or defraud the creditors by the transaction, and (2) that the benefited creditor had knowledge of the fraudulent intent of his debtor and participated or co-operated therein, with the intent to hinder, delay, or defraud other creditors. *Harvey v. Phillips,* 193 Iowa 231; *Ratekin v. Droge Elev. Co.,* 190 Iowa 596. Conceding, as we may well do, under the facts before us, the intent of the bankrupt to avoid the payment of certain creditors, we must also discover satisfactory proof of the intent of the grantee of the deed to assist and aid the bankrupt in effectuating the fraudulent purpose.

It is undisputed that the bankrupt, at the time of the execution of the deed, owed his father $3,000; and the validity of this debt is not questioned.

That a creditor may secure his claim, and in so doing receive a preference from his debtor, even though the debtor is insolvent, is well settled; but the *bona fides* of the transaction must be shown, or the transaction is impeachable. If the instant creditor was simply vigilant in securing a valid indebtedness, and not accessory to the fact in aiding a failing or insolvent debtor, his act is not subject to attack. In effecting this purpose, he must not unnecessarily hinder or delay other creditors or impair their rights by placing it in the power of the debtor to screen a part of the proceeds. Briefly stated, the creditor of an insolvent debtor must act in good faith, and not intermingle his motive and intent with the debtor to assist the latter in his scheme to defeat other creditors. If he does, he will find himself stripped of the protection which the law otherwise would accord him. *Steinfort v. Langhout,* 170 Iowa 422; *First Nat. Bank v. Eichmeier,* 153 Iowa 154; *Richards v. Schreiber, Conchar & Westphal Co.,* 98 Iowa 422; *Fuller v. Griffith,* 91 Iowa 632.

The real and pertinent inquiry, then, gravitates about the intention of the parties: that is, the *bona fides* of the transaction. The preference having been given to a bona-fide creditor, the burden of proof is on him who challenges the transaction. The underlying principle is simple. It is that a debtor's property shall not be fraudulently diverted from the payment of his debts. This involves the mutual intent of both debtor and preferred creditor to defraud; and their act must, in fact, hinder or delay other creditors in collecting their debts. The mere fact that other creditors are hindered or delayed as a result, in giving preference to one creditor, is not enough; nor is the knowledge of insolvency by the preferred creditor a sufficient reason for the impeachment of the security taken from the debtor. This latter circumstance, standing alone, would be a cause on the part of a creditor to secure a valid indebtedness.

2. FRAUDULENT CONVEYANCES: evidence: burden of proof.

An analysis of the evidence is necessary for an intelligent understanding of this case. Not only is it shown that, in February, 1921, and at a time when the bankrupt was insolvent, the deed in question was executed to the defendant, but, in August, 1921, a chattel mortgage was executed by the bankrupt to the defendant in the sum of $3,000, to secure an indebtedness owed to the mortgagee in the sum of $2,400, and, during the insolvency, the bankrupt's bank account at the Farmers Savings Bank at Boyden, Iowa, was transferred to his wife. The bankrupt testified that his father (defendant) first talked to him about the execution of the deed, and that his father wanted it as security for rent. At the time the deed was executed, the $10,000 on the Meyners real estate contract was not due, but became due less than a month from the date of the deed. The bankrupt knew at that time that he would be unable to meet payment. When the chattel mortgage was executed, the bankrupt states that his father knew that Meyners was pressing him for collection, and that his father wanted "to keep Meyners from getting the property;" and that "his father decided to fix it that way so as to keep Meyners off the property." The bankrupt himself admits that he gave the chattel mortgage to his father to keep Meyners from getting the personal property.

"Q. But you did give it for the purpose of keeping Meyners [a creditor] off? A. Yes. Q. Did you and your father talk about the chattel mortgage in order to keep Meyners off? A. I don't know. I gave it for that purpose."

Under the circumstances, the pertinent question that arises in the mind of a chancellor is this: What explanation is offered by the grantee of the instruments in question in taking a deed, instead of a mortgage, when a security only was intended? Why was the consideration named in the deed fictitious, and why did it reserve a secret benefit to the grantor in a sum of $7,000? Why was the consideration in the chattel mortgage $600 in excess of the amount actually owing? Clearly, the defendant would have been as amply protected by a mortgage as by a deed; and, the protection of the creditor being the sole purpose of the instrument, no legal reason can be assigned why a fictitious consideration should be recited in either instrument. It must be viewed as a secret trust. Does the record disclose any satisfactory explanation on the part of either grantor or grantee? As indicated, the purpose of the grantor is plain. It was to hinder and defraud creditors. We find that the defendant was asked concerning this matter, and he testified that he did not pay the difference of $7,000 to his grantor.

"Q. Did you give him any mortgage for this $7,000 difference? A. No. Q. Did you give him any note for it? A. No. Q. Did you give him anything to show there was a discrepancy of $7,000 in the amount of the debt owed to you and the recited consideration? A. No. Q. Do you consider yourself indebted to Huibrecht Kleyne now in the amount of this difference of $7,000? A. No. Q. Was there any agreement ever made between you and Huibrecht Kleyne to turn this land back for $3,000? A. Yes, if I received my rent, then I would. That was an oral agreement. Q. Why did you have it put in the deed '$10,000,' when he only owed you $3,000? A. He thought that was the value of the land. Q. And then you were doing, at the time, what Huibrecht told you to do, were you not, Mr. Kleyne? A. Yes. Q. And that is what induced you to take the deed for the consideration of $10,000? A. Else I

couldn't get it. Q. And that was put in there just for the purpose of aiding Huibrecht Kleyne, was it? A. Yes."

With respect to the excess of consideration named in the chattel mortgage, the defendant states that it was to avoid some trouble he was anticipating.

"Q. What was this trouble you refer to? A. He would get into trouble. Q. Who do you mean would get into trouble? A. Huibrecht, my son. Q. What trouble did you apprehend he was going to get into? A. He had bought land. I wanted my $2,400 and expenses. Q. What expense do you refer to? A. Well, if Huibrecht should get into trouble over it, due to creditors' pressing him for their debts and money he owed them. Q. Who were these creditors that were giving Huibrecht trouble at this time? A. From whom he had bought land. Q. Was Meyners pressing him for payment on what he owed him at that time? A. Sure. Q. So you took this chattel mortgage on this property, although you still had a landlord's lien on it to protect you at that time, did you not? A. Yes. I did not know how much property Huibrecht had at that time, but I didn't think he had enough to pay creditors and my rent, too. He didn't have. I didn't know just what he had. Q. And you also didn't want them [creditors] to take any of Huibrecht's property so long as he owed you? A. I wanted what was coming to me. Q. And you didn't want Meyners or any other creditor to take property as long as he owed you? A. I want my own."

(The last question was repeated, upon request of counsel, and the witness answered, "No.")

If we view the instant transaction as a screen to protect the debtor's estate from his other creditors, although the preferred creditor had a just demand, and if it may be said that the preferred creditor participated and co-operated in the design of the debtor, and did not act solely and with the single purpose of securing or protecting himself, the law will hold the transfer void. A transfer of property to a creditor intended to cut off the redress of other creditors is fraudulent when any advantage is reserved to the debtor. That a conveyance with a secret reservation for the benefit of the vendor

tends directly to hinder and delay creditors is evident. Such reservations and secret trusts tend to deceive creditors; and the law will attach the presumption that every man intends the probable consequences of his acts, under such circumstances.

"No conveyance is deemed bona-fide, within the proviso, which is accompanied with any secret trust. It matters not how this secret trust is created or expressed, or whether it is express or implied. It may either affect the whole transfer or constitute only a part of the consideration for it." Bump on Fraudulent Conveyances (2d Ed.) 212.

See, also, 12 Ruling Case Law 544 *et seq.;* 20 Cyc. 475.

In the instant case, there was a secret agreement between the bankrupt grantor and his grantee by which the property was to be reconveyed on payment of the actual indebtedness owing, and that the recited consideration would not be demanded. Both parties knew what the recited consideration in the deed was. Both parties knew the actual existing indebtedness. Both parties upon the trial testified that it was given only for security. The fact stands, however, that the grantor had a reserved benefit of $7,000, and this amount was as effectually withdrawn from the assets of the grantor as though that amount of cash had been given him. We do not deem the explanation offered satisfactory. Not only does the evidence, but the legitimate inferences therefrom, disclose that the grantee was attempting to keep a creditor "off from the property." See *Macomber v. Peck,* 39 Iowa 351; *Wood v. Scott,* 55 Iowa 114; *Bussard v. Bullitt,* 95 Iowa 736; *Lombard v. Dows & Co.,* 66 Iowa 243; *McMahon v. Pithan,* 166 Iowa 498; 20 Cyc. 479.

It is a rule of quite universal application that other acts of a similar character may be shown for the purpose of estab-

3. FRAUDULENT CONVEYANCES: evidence: similar transactions.

lishing intent, and this is especially true when they constitute indicia of fraud. *Sutton v. Kelliher,* 115 Iowa 636.

Although blood relationship is not *per se* a badge of fraud, it strengthens the inferences that arise from circumstances; and whenever this confidential relation exists, the parties are held

**4. FRAUDULENT CONVEYANCES: transfers invalid: relationship of parties.** to a fuller and stricter proof of the consideration and the fairness of the transaction.

We cannot avoid the conclusion that the transaction in question is impeachable, and under the ban of the law.

One further question is presented. It is in the nature of a special defense, and involves the alleging and proving of claims filed against the estate in bankruptcy. It asserts that **5. PLEADING: sufficiency: failure to question in trial court.** the pleading of plaintiff is defective in that it does not allege that claims were proved and allowed against the estate of the bankrupt before the referee. The petition recites:

"10. That there are insufficient assets in the estate of Huibrecht C. Kleyne, bankrupt, to pay in full the creditors whose claims are filed therein.

"11. That this plaintiff is the legal representative of the unsecured creditors of the estate of Huibrecht C. Kleyne, and that there are unsecured claims of creditors filed in said estate whose claims were valid and subsisting claims of indebtedness against the said Huibrecht C. Kleyne during all the time stated and referred to in this petition."

Defendant in answer admits Paragraphs 10 and 11 of plaintiff's petition. This admission not only covers the filing of the claims against the estate of bankruptcy, but also the validity of them. The trustee is the legal representative of the unsecured creditors, and it is admitted that he had legal authority to institute this suit. Appellant's brief recites that the petition and schedules of the bankrupt were introduced in evidence without objection, and the schedules show the admitted indebtedness of the bankrupt, including several of the bankrupt's unsecured debts. There is no occasion to pass upon the objection now made. Issues were joined; and it must be held that, if the petition failed to recite proper allegations, it should have been attacked in a legal manner. It is now too late, and the urged objection must be considered waived. It is academic law that one must plead the ultimate facts, and is confined in his proof to his allegations.

The appeal presents primarily a fact question. Upon a

careful review of the record, we are satisfied that the plaintiff sustained the material allegations of his petition. Wherefore, the judgment and decree entered by the trial court is—*Reversed.*

ARTHUR, C. J., and STEVENS and VERMILION, JJ., concur.