LEOTO T. CARLISLE, Appellee, v. W. B. MILLIMAN, Sheriff, et al.,
Appellants.

FRAUDULENT CONVEYANCES: Confidential Relations of Parties—
1 Preference to Wife. A wife who has a bona-fide claim against her
   husband may, when actuated by the *sole* and good-faith purpose of
   obtaining payment, take a nonexcessive conveyance of property
   from her husband, even though 'she knows, at the time, that the
   husband is financially embarrassed, and intends by the conveyance
   to circumvent another of his creditors.

EXECUTION: Claims by Third Persons—Unrecorded Deed. A valid
2 unrecorded deed has priority over the levy of an execution.

Headnote 1: 27 C. J. pp. 639, 640. Headnote 2: 23 C. J. p. 510.

*Appeal from Harrison District Court.*—O. D. WHEELER, Judge.

APRIL 7, 1925.

ACTION to enjoin a sheriff's sale. Plaintiff was permitted
to prevail, and defendant appeals.—*Affirmed.*

*Stipe, Davidson & Davidson* and *Robertson & Havens,* for
appellants.

*C. W. Kellogg,* for appellee.

ALBERT, J.—I. The plaintiff and her husband, W. M. Car-
lisle, purchased and made their homestead a town property in
Missouri Valley, Iowa, which they occupied until the year 1920,
when the same was sold. Title to the homestead
was originally taken in plaintiff herein, and so
continued until the time of sale. The money
derived from the sale of said homestead was de-
posited in one of the banks in Missouri Valley in the name of
the plaintiff herein. The husband, W. M. Carlisle, obtained from
said bank, at two different times, sums totaling $5,750, which he
sent to Des Moines to a son-in-law for investment, and which
was eventually lost in speculation in some one of the late infla-

1. FRAUDULENT
CONVEYANCES:
confidential re-
lations of par-
ties: preference
to wife.

tion deals. Later, another lot was purchased, and a house built as a residence for the Carlisles. Part of the money derived from the original homestead was used in the construction of the house on the new lot. The transaction of the selling of the original homestead was handled by the husband, W. M. Carlisle, and he deposited the money to his wife's credit in the bank. This case largely hinges on this transaction.

It is the claim of the plaintiff herein that she loaned the $5,750 to her husband with the understanding that it was to be repaid to her when they were ready to build the new house. Carlisle himself was dead at the time of the trial below, so we have not his testimony. Her testimony is undenied that the matter was talked over between them, and that she loaned this money to her husband with the understanding that it was to be repaid to her, as above stated. She was examined in auxiliary proceedings sometime prior to the commencement of this action, and it is claimed that there is such conflict in her testimony in the present case and that given on the former examination that she should not be treated as a credible witness. The evidence, however, shows that she was unfamiliar with business ways and business usages, and that her husband usually transacted her business for her, after having talked it over with her.

We do not feel, from the record made in this case, that the disparities, whatever they may be, between the testimony in this case and the testimony given on former examinations, are such that they should be treated as discrediting her testimony. Her testimony, therefore, stands unimpeached, that the $5,750 was a loan to her husband, and that the same was understood between them to be repaid to her for the purpose of constructing the new house on the lot which was already in her name.

W. M. Carlisle, during the large part of their married life, was engaged in the hardware business in Missouri Valley. He was the owner of a five-sixths interest in a brick business block in said town. Seven years previous to the commencement of this action, Carlisle and another had become indebted to Fairbanks, Morse & Company to the amount of approximately $4,000. This claim had been sued in Page County, and went to judgment in September, 1922.

In July, 1922, W. M. Carlisle, being unable to repay to his

wife the said $5,750, although requested by her to do so, deeded to her his five-sixths interest in the business property to which reference has been made. She says that, at the time this deed was made to her, while she formerly knew of this indebtedness to Fairbanks, Morse & Company, she understood that it had been settled, or the case dismissed. She says that her husband delivered to her the deed, and that she turned it back to him for the purpose of having the same recorded. It is not shown to have been recorded until after the levy of the execution by Fairbanks, Morse & Company on the business property thus deeded to her. Her testimony in this respect is undisputed, and must be taken as true.

After the levy of said execution under the Page County judgment, by the sheriff herein, plaintiff brought this action to enjoin a sale under said judgment, and to quiet title as against the same. The evidence fairly shows that the business property thus deeded to the wife was worth in the neighborhood of from $5,500 to $6,000. The Page County judgment, costs, interest, and accrued costs amount to about $5,000.

It is the thought of the defendants that this conveyance of the business property to the plaintiff herein was done with intent to defraud creditors of said W. M. Carlisle, it being all the property he owned, it being deeded after the Page County suit was commenced, and before the same was tried. The evidence, however, does not show that W. M. Carlisle had any creditors other than Fairbanks, Morse & Company.

If we give the defendants the full measure of their contention in this case, at the time Mrs. Carlisle took this deed she knew that her husband was in financial distress. Even though she did know that this property was being deeded to her to avoid the subjection of the same to payment of whatever judgment defendants should obtain against her husband in the Page County court, this of itself is not enough to defeat her rights in the property.

There is no direct evidence that she knew that he had any intention of defrauding the defendants; but, even if she did know that, if she was a bona-fide creditor of his, she had the right to protect her interest, so long as she acted in good faith, and not for the purpose of assisting him. This rule is announced

in the case of *First Nat. Bank v. Eichmeier,* 153 Iowa 154, at 163, and the cases therein cited.

We have heretofore said that, under the evidence in the case, the money which the husband sent to Des Moines for investment, to wit, the $5,750, was a loan from the plaintiff herein to the said husband, and in satisfaction of said loan he deeded the business property above referred to.

A debtor, under the law of Iowa, is entitled to prefer any one of his creditors by payment of the debt or by conveying property to him in satisfaction of the debt, even though it be to the disadvantage of other creditors. *Steinfort v. Langhout,* 170 Iowa 422; *Poole, Gilliam & Co. v. Seney,* 66 Iowa 502.

The wife is certainly entitled to as much consideration as other creditors would be in the securing or payment of debts due from her husband. We have so said in *Keosauqua St. Bank v. Hartman,* 184 Iowa 961; *State Bank of Deep River v. Wolford,* 178 Iowa 89; *Sprague, Warner & Co. v. Benson,* 101 Iowa 678; *Sims v. Moore,* 74 Iowa 497; *City Bank v. Wright,* 68 Iowa 132; *Pieter v. Bales,* 126 Iowa 170.

Under this line of authority, there is no question but that, if there is a bona-fide debt owed by the husband to the wife, she has the same right as any other creditor to collect the same, whether it be paid in cash or by conveyance of property to her. It has ever been the rule of law in this state that the reward is to the diligent creditor, regardless of the fact that other creditors may lose thereby. We summed up the various decisions in this state governing this matter, in the case of *Crenshaw v. Halvorson,* 183 Iowa 148, where we said:

"If the husband was, in fact, honestly indebted to his wife, and the conveyance was made, received, and accepted in good faith, in payment or satisfaction of such debt, and the consideration was not grossly inadequate, it was not fraudulent; and it will not be set aside, nor the property be subjected to the payment of the husband's other creditors, even though it operates to hinder or prevent the collection of their claims."

We therefore say, as to this phase of this matter, that there was a bona-fide debt existing between the husband and wife, and that the conveyance to her of the undivided five sixths of the business property was not a violation of the law of this state,

II.  Some question is raised as to the fact that the conveyance was not of record at the time the execution was levied.  We have repeatedly held that the execution creditor gets no higher rights than his debtor had at the time of the levy of the execution.  That his rights are not paramount to an unrecorded deed, see *Norton, Jewett & Busby v. Williams,* 9 Iowa 528; *Moorman v. Gibbs,* 75 Iowa 537; *Weare & Allison v. Williams,* 85 Iowa 253; *Rea v. Wilson,* 112 Iowa 517; *Crenshaw v. Halvorson,* supra; *State Bank of Deep River v. Wolford,* supra.

2. EXECUTION: claims by third persons: unrecorded deed.

After having given careful attention to the generous briefs and arguments filed herein, we reach the conclusion that the district court was justified in entering the judgment which it did herein; that by so doing it committed no error.—*Affirmed.*

FAVILLE, C. J., and EVANS and ARTHUR, JJ., concur.