COMMERCIAL SAVINGS BANK OF LOHRVILLE, Appellant, v. A. B. McLAUGHLIN et al., Appellees.

**FRAUDULENT CONVEYANCES: Preference—Knowledge and Intent**
1  **of Grantee.** A bona-fide creditor may, in satisfaction of his debt, take a conveyance from his debtor at a fair valuation, even though such creditor knows that the debtor is otherwise financially involved and that the conveyance will work a preference against other creditors. The all-essential requisite is that the creditor shall participate in no fraud.

**FRAUDULENT CONVEYANCES: Consideration—Value of Homestead.**
2  On the issue whether a creditor took a conveyance of real property at a fair valuation, the value of that part of the land which represented the debtor's homestead must be excluded from the computation.

Headnote 1:  27 C. J. p. 629.  Headnote 2:  27 C. J. p. 445.

Headnote 1:  32 L. R. A. 33; 12 R. C. L. 535.

*Appeal from Calhoun District Court.*—M. E. HUTCHISON, Judge.

JULY 1, 1927.

Action in equity to set aside a deed alleged to be fraudulent. Decree was entered in favor of the defendants. Plaintiff appeals.—*Affirmed.*

*Stevenson & Stevenson,* for appellant.

*Gray & Gray* and *Kelleher & Mitchell,* for appellees.

DE GRAFF, J.—The instant action presents what is commonly denominated a creditor's bill. The characters in the legal drama are those usually found, to wit: A judgment creditor, the judgment debtor, and his grantee, who is a preferred creditor. The subject-matter involves a 320-acre tract of Calhoun County land. By way of more specific identification of the parties, it

1. FRAUDULENT CONVEYANCES: preference: knowledge and intent of grantee.

may be said that the plaintiff, Commercial Savings Bank of Lohrville, Iowa, is the judgment creditor, and that, on the 17th day of February, 1925, it recovered a judgment against A. B. McLaughlin, defendant herein, in the sum of $5,248.90, with interest and costs. The return made by the sheriff, February 25, 1925, on the execution, recites "No property found."

The defendant-appellees, A. B. McLaughlin and Theresa Mitchell, are brother and sister; and, on January 31, 1925, A. B. McLaughlin (a widower) executed and delivered a warranty deed to Theresa Mitchell to the half section of land in controversy. On that date McLaughlin was a debtor to several persons, including his sister Theresa Mitchell and his father, Ambrose McLaughlin. The deed in question recited a consideration of $64,200, and that the premises were free and clear from all liens and incumbrances except a mortgage of $40,000 to J. D. Barr, which the grantee, Theresa Mitchell, assumed and agreed to pay, with interest thereon, as per stipulations in said mortgage.

The law of this case has been stated in many decisions of this court. In the last analysis, a fact question only is presented. Let us first turn to the controlling legal principles.

It is not sufficient for the attacking creditor to prove that the grantor intended, by the conveyance, to hinder and delay creditors, but it must also be shown that the grantee participated therein, or had knowledge of such facts as should have put him, as a reasonable person, on notice of the fraudulent purpose and intent of the grantor. *Botna Valley St. Bank v. Greig,* 190 Iowa 155; *Swanson Automobile Co. v. Stone,* 187 Iowa 309.

A creditor may secure his claim, and in so doing receive a preference from his debtor, even though the debtor is insolvent; but the *bona fides* of the transaction must be shown. *Barks v. Kleyne,* 198 Iowa 793; *Kohn Bros. v. Clement, Morton & Co.,* 58 Iowa 589.

The essential issue involves the fraudulent intent. Blood relationship between the parties is not *per se* a badge of fraud, although it strengthens the inference that arises from the circumstances, and requires strict proof of the consideration and the fairness of the transaction. *Barks v. Kleyne,* supra; *Hansen v. First Nat. Bank,* 197 Iowa 1101. Nor does the fact that the

grantee accepted the deed with knowledge that her grantor had other creditors warrant a conclusive inference of fraud or fraudulent participation. A creditor, acting in good faith, may take security from his debtor even though he knows that there are other creditors, and the effect of the debtor's action will be to defeat *pro tanto* other creditors. *Halloran v. Halloran,* 195 Iowa 484; *Carlisle v. Milliman,* 199 Iowa 949; *Stroff v. Swafford Bros.,* 81 Iowa 695.

If the defendant A. B. McLaughlin was, in fact, honestly indebted to his sister Theresa, and the conveyance was made, received, and accepted in good faith in payment or satisfaction of such debt, and the consideration was not grossly inadequate, it was not fraudulent, and the conveyance will not be set aside, nor the property subjected to the payment of the brother's other creditors, even though it operates to hinder or prevent the collection of their claims. See *Crenshaw v. Halvorson,* 183 Iowa 148. The preferring of one creditor is not *per se* evidence of fraud, although the effect of such a transaction would be to give one creditor a preference over others. *Farmers Loan & Tr. Co. v. Scheetz,* 196 Iowa 692; *Curie v. Wright,* 140 Iowa 651.

We now turn to the fact side. What circumstances impeach or tend to impeach the conveyance involved herein?

On September 26, 1922, McLaughlin executed a mortgage to his sister Mrs. Mitchell for $25,000. At the time the deed was made, McLaughlin owed his sister approximately $12,000 by direct obligation; but it was understood between them that further funds were to be advanced; and that the mortgage should cover such advances, and also cover an obligation of A. B. McLaughlin's to his father, Ambrose.

It may be observed that the plaintiff-bank called, as its witnesses, Mrs. Mitchell and the scrivener of the deed (Cashier Van Horn, of the Lohrville Savings Bank). These witnesses testified to the material facts surrounding the transaction. The plaintiff, therefore, vouched, to a certain extent, for their truthfulness; and, although the evidence was not conclusive upon the plaintiff, it tended to strengthen the claim of the defendants, rather than the contention of the plaintiff. See *Farmers Loan & Tr. Co. v. Scheetz,* supra; *Wilson v. Prettyman,* 195 Iowa 598; *Harvey v. Phillips,* 193 Iowa 231.

How does Theresa Mitchell explain the transaction? She testified:

"The way I paid my brother the consideration for the deed to me was that I assumed the Barr mortgage of $40,000 [purchase-money mortgage on the land in controversy]; then I added what he owed me ($11,467 and some cents); then he owed my father $12,000 and something,—I don't know the exact amounts. The consideration in the deed did say $64,200. Mr. Van Horn, of the Lohrville Savings Bank, drew the deed. I turned over the notes and papers, and Mr. Van Horn figured them up. The notes and papers I turned over were the notes I had against Ben [her brother, A. B. McLaughlin]. At the time the $25,000 note and mortgage were made, my brother only owed me about $12,000. He was in need of some money, and I advanced it. At the time the deed was made, the note and mortgage were canceled. After this $25,000 mortgage was given by my brother to me, in 1922, I advanced $8,500 to my brother. I had mortgages and notes coming to me. George Speer paid a note of $12,000 he owed me. He lives at Havelock, in Pocahontas County; and when Speer paid that, I advanced this money [$8,500] to my brother. My brother never paid that back to me, except as he paid it back by deeding me the land. My father had a note of $11,000 given by A. B. McLaughlin. I took over that note, and gave him my note in place of it. My father now holds my note in place of my brother's note for the same amount,—$12,000 and something."

Van Horn, who prepared the deed, produced in evidence his written calculations at the time the deed was executed. The aggregate amount of money owed by McLaughlin to Mrs. Mitchell, including interest, was $11,467.04. This is undisputed.

Van Horn testified that Theresa said "she didn't want to take the deed with the intention of beating anybody, but I don't think she said that she didn't want to take the deed; that she would like to have the matter fixed up so as to protect these other creditors, so that they wouldn't lose anything; that she was willing to do whatever was right in the matter; that she suggested that a deed be made to a trustee, for the benefit of the creditors that A. B. McLaughlin was owing; and that she was willing to do that, if her brother was willing."

"Q. You never heard anything said that Mrs. Mitchell

wanted to defraud anybody? A. No, she said she didn't want to. I do not believe she said that was what she wanted done; that she said, in substance, that all she wanted was her money out of it, and her father's money out of it.''

Van Horn was called in ''to figure the consideration at the exact amount of the debt that was owing by him [McLaughlin] to his sister and his father.''

''Q. That is what you wrote in the deed? A. Yes, sir. Q. And that is what you understood you were to write in the deed? A. Yes, that's the exact amount that he owed. Q. And that Mrs. Mitchell was to take the land over for that debt? A. Yes, sir.''

It is true that there was another note and mortgage, dated March 1, 1920, owed by A. B. McLaughlin to one Charlotte M. Hull. This mortgage covered 360 acres of Calhoun County land, but not the land in controversy, and recited a consideration of $69,880.

Some claim is made by appellant that, at the time the deed to Theresa Mitchell was made, her brother, A. B. McLaughlin, was having some trouble ''with the Hulls;'' but Mrs. Mitchell disclaims all knowledge ''about his business with the Hulls.'' She knew that there was a mortgage on this other tract of land, but she did not know the amount of the mortgage. She denied that anything was said to her by her brother, in the presence of Cashier Van Horn, to the effect that her brother ''wanted to make you this deed so as to keep the Hulls from having a deficiency judgment against him.''

Van Horn testified that he did not remember just what McLaughlin did say with respect to the Hull mortgage, but that something was said by Mrs. Mitchell (apparently subsequent to the deed transaction) to the effect that the reason Ben made that deed to her ''was because that he was afraid of that Hull mortgage.''

The record further discloses that the Hull mortgage was satisfied of record about March 1, 1924, but the nature of the settlement is not disclosed. It is also shown that, at the time the deed was given by McLaughlin to his sister, there was no effort being made on the part of anyone concerned with the Hull mortgage to foreclose same, and that McLaughlin at that time was not expecting a foreclosure of that mortgage.

There is nothing in the testimony that indicates that Theresa Mitchell was a party to any plan whereby an attempt was made to defraud anybody, and there cannot be any serious dispute that she held a bona-fide indebtedness owed by McLaughlin.

It is also clearly shown that there was a novation of the debt owed by McLaughlin to his father, Ambrose, and that it was the original intent of the parties to the $25,000 mortgage that the obligation of A. B. McLaughlin to his father was to be protected by the mortgage. Mrs. Mitchell did assume that obligation, and gave her note to Ambrose McLaughlin, and the son's note to his father was canceled.

Some argument is made, bearing on the value of the land in ratio to the consideration named in the deed. The half section was purchased from Barr by McLaughlin at the peak of the Iowa land inflation period, and the land sale was consummated at a peak price. Without reviewing the variation in the testimony bearing on the value of this farm about January, 1925, it must be said, under the testimony, that its reasonable market value did not exceed $200 per acre.

There is a further legal factor which must be taken into account in the determination of the value of this farm. Forty acres thereof constituted the debtor's homestead, as against any creditor who might have asserted a claim against the land. McLaughlin was the head of a family, with four minor children living with him on said farm. He claimed his right of homestead. True, it had not been formally platted; but this was not essential. A homestead requires no proclamation or formal declaration, but comes into existence by operation of law, contemporaneous with occupancy. *Hostetler v. Eddy,* 128 Iowa 401; *Nye v. Walliker,* 46 Iowa 306; *Yost v. Devault,* 9 Iowa 60.

2. FRAUDULENT CONVEYANCES: consideration: value of homestead.

It being held, as we do hold, that a homestead right existed in favor of A. B. McLaughlin, the value of the homestead was not an asset available to creditors, or one on which they could rely. Consequently, the value of such homestead in the determination of a creditor's bill, such as this, must be excluded. See *Dettmer v. Behrens,* 106 Iowa 585; *Stubblefield v. Gadd,* 112 Iowa 681; *Richards v. Orr,* 118 Iowa 724; *Veeder v. Veeder,* 141 Iowa 492; *Willey v. Hite,* 175 Iowa 657; *Wadle v. Boston Market Co.,* 195 Iowa 46.

The mathematics of this case show no testimony that would have justified the trial court in finding a valuation that would avail anything to the plaintiff, even if the deed were set aside as fraudulent.

The trial court ruled correctly, and the decree entered is— *Affirmed.*

All the justices concur.