WESLEY ERUSHA, Appellant, v. ANTON WISNEWSKI et al., Appellees.
No. 39114.

APRIL 2, 1929.

*Donnelly & Lynch*, for appellant.

*C. W. Bingham*, for appellees.

KINDIG, J.—The legal title to 133 acres of land in Johnson County is in the defendant-appellee Frank Wisnewski. Plain-

tiff-appellant claims the equitable ownership thereof is in the defendant-appellee Anton Wisnewski, and therefore subject to execution to satisfy a judgment for $4,529.60 held by the former against the latter. Formerly this real estate was in the name of the appellee Anton Wisnewski, and by him was conveyed to the appellee Frank Wisnewski. This transfer is attacked by appellant on the theory that it was without consideration and fraudulent.

I. If, as a matter of fact, the "conveyance" was a mere voluntary gift to the appellee Frank Wisnewski, and made at a time when the grantor, Anton Wisnewski, was insolvent, it would be subject to successful attack in a court of equity by creditors. *McNally v. Emmetsburg Nat. Bank*, 197 Iowa 602; *Kolb v. Mall*, 187 Iowa 193. Moreover, an insolvent debtor is not permitted to fraudulently dispose of his holdings in order to hinder or delay his creditors. So if, when a transfer of property is made, the insolvent grantor intended thereby to defraud his creditors, and the grantee benefiting by the transaction had knowledge of the unlawful intent, and participated or co-operated therein, then the conveyance is voidable, and may be successfully attacked by those interested. *Barks v. Kleyne*, 198 Iowa 793; *Harvey v. Phillips*, 193 Iowa 231; *Ratekin v. Droge Elevator Co.*, 190 Iowa 596. In the *Harvey* case we said:

"Under such circumstances, it is held that the test of a fraudulent conveyance, in case of a transfer for a valuable consideration, is the mutual fraudulent intent of the parties, and that it is not enough to show fraudulent intent on the part of one, without a corresponding intent on the part of the other."

But if, on the other hand, the grantee in such transaction acts in good faith and gives a valuable consideration, the grantor's fraud in the premises will not be enough to invalidate the grant. *Barks v. Kleyne*, supra; *Carlisle v. Milliman*, 199 Iowa 949. Such is true even though the grantee had knowledge of the grantor's fraudulent intent, so long as the former does not participate therein. *Jordan v. Sharp*, 204 Iowa 11; *Commercial Sav. Bank v. McLaughlin*, 203 Iowa 1368.

Furthermore, it is to be noted that fraud does not arise alone because a failing debtor exhausts his property to secure one creditor and permits others to go without such benefit. *Farmers Loan & Tr. Co. v. Scheetz*, 196 Iowa 692.

II. Appellant claims that fraud permeates the transaction between the appellees, Anton and Frank Wisnewski. ··They are brothers, and that relationship is relied upon ·by appellant as the basis for his proof of the alleged unlawful conveyance.

Manifestly, however, the fact that appellees· are brothers does not, of itself, suffice,· in the case at bar. ·It .may strengthen the inference of fraud, but such element itself does not arise through that relationship alone. *Commercial Sav. Bank v. Mc-Laughlin*, supra; *Carlisle v. Milliman*, supra; *Farmers Loan & Tr. Co. v. Scheetz*, supra; *Harvey v. Phillips*, supra; *Hansen v. First Nat. Bank*, 197. Iowa 1101. Likewise, .in the instant case, the blood relationship aforesaid is not, in and of itself, a badge of fraud, but, nevertheless, it is a circumstance to· be. considered in determining whether or not the conveyance from Anton to Frank Wisnewski was valid.

III. With those fundamental principles thus recognized, a review of the.facts is now necessary.

Three brothers, Albert, Anton, and Frank Wisnewski, came to America from Poland, Germany, about 35 years ago. Albert was the oldest, and Frank the youngest. Anton is illiterate. He cannot read, write, or figure; while Frank is somewhat educated and accomplished, for he can not only read, write, and figure, but in addition thereto, is somewhat of. a mechanic and carpenter. Apparently Albert and Anton in the year 1905, were operating a farm, as tenants, near Fairfax. There they lived by themselves, and· did their own housework. However, Anton did not like to cook. These brothers—that is, Albert and·Anton —at that time considered. the purchase·of a 350-acre farm in Johnson County. Doubt on Anton's part about the advisability thereof prevented the consummation. of the deal. · At that time, Frank, who had been working in Dakota for $45 a month, came to see his brothers. As a result; Anton hired Frank to work for him. Resultantly, Anton, thus assisted, was induced to purchase the 350 acres with Albert. Frank and Albert were not compatible, and the former would not work for the latter. Nevertheless, Frank was willing to live with his other two brothers, so long as. Anton was his employer. Because of said employment, Frank became the cook, drafted and constructed .the buildings on the vacant 350 acres, and otherwise improved it.

Some talk was had concerning Frank's wages. It was

agreed that the consideration was to be $40 per month the year round. Thus Frank worked for approximately 12 years without receiving any pay. In the meantime, about 1910, Anton and Albert divided the large farm,—Albert taking 217 acres, and Anton 133. That 133-acre tract is the subject of the present controversy. Originally the title to the large tract was held in Albert's name. He deeded the smaller portion to Anton. After this division, Frank continued to work for Anton until 1918, when he returned to Dakota. Those services rendered by Frank were continuous, except, during the 12 years aforesaid, four months were spent in Cedar Rapids and two months in Chicago. When Frank left on occasions for short intervals, he personally hired and paid his brother-in-law to help Anton run the place.

Throughout these years, Frank asked for his pay, but was told by Anton to wait until appellant was reimbursed for the money advanced when the 350 acres were purchased by Anton and Albert. Consequently, the matter thus rested until 1921. We pause at this juncture to note that, in 1910, part of the purchase price for the 350 acres was loaned by appellant, Erusha. Uncertainty exists as to the exact amount, but apparently it was approximately $10,000. First there was but one note, and it was signed by Albert and Anton. Later, when the land was divided in the manner and way before described, the principal of the note was also separated into two parts. The amount corresponding with Anton's land was assumed by him, and that conforming with Albert's portion was taken over by him. According to the record, a new note was executed by Albert for his share of the original indebtedness, and Anton signed, as surety thereon. Parenthetically, it is to be noted that this is the basis for the indebtedness which now constitutes the judgment that appellant seeks to have declared a lien on Frank's 133 acres of land. On the other hand, Anton executed a new note for his part of the indebtedness, and Frank became a surety on that. No further change appears to have been made in reference to the indebtedness. While the date is not clear, it appears that Anton paid his note to appellant in 1921. Meanwhile, Anton had heard nothing about Albert's note to appellant, but assumed it had been paid.

Subsequent to the payment of Anton's note to appellant, Frank returned from Dakota to Iowa. Again he demanded his

wages from Anton. So, in view of the fact that Anton had paid appellant, he was now in a position to make an adjustment with Frank. Whereupon, Anton asked Frank to tell him the amount due for the wages. Frank figured the items, and found the aggregate, principal and interest, to be $8,500. Replying to this, Anton said that $8,500 was all the farm was worth. Following that suggestion, Anton remarked that he was not feeling well, needed to go away, and required some expense money. As a result of the negotiations, Frank paid Anton an additional $500, and received a deed for the 133 acres of land, in 1921. The purchase price named in the instrument of conveyance was "$1.00 and other valuable considerations," but the revenue stamps indicated a valuation of $9,000. Thereupon Frank took possession of the land, and has ever since kept it. Appellant commenced suit against Anton, to recover judgment on Albert's note, on which, as before explained, the surety relationship existed. Judgment was in due time entered. Execution issued, and returned "nothing found."

It is undisputed that Anton had no property, after conveying the 133 acres to Frank. Evidence was introduced to show the value of this realty. Four witnesses testified on that subject. Their valuations ranged from $55 to $70 per acre. Much of the farm was not tillable. There is too much sand, some overflow, and timber land. Anton was unable to sell or rent it successfully. Also, it is to be remembered that in 1921 there was a slump in farm values. Obviously, therefore, the consideration paid by Frank was not unreasonably low, but, on the other hand, was the just and fair value of the property. Hence, the conveyance was not without full consideration.

IV. Yet, notwithstanding the testimony of Frank and Anton concerning the wages, appellant argues that the alleged consideration was inadequate, and therefore the mere insufficiency thereof itself is evidence of fraud. Notation should be made at this point that appellant in his petition alleged failure of, rather than insufficient, consideration. See *Malcolm Sav. Bank v. Mehlin*, 200 Iowa 970.

Moreover, Anton and Frank both testified for appellant. Such evidence, however, was not conclusive, in the sense that appellant could not contradict it. *Farmers Loan & Tr. Co. v. Scheetz*, supra. Notwithstanding this privilege, appellant did

not choose to make such refutation. Therefore, in a sense, appellant vouched for the truthfulness thereof. *Harvey v. Phillips,* supra.

From the testimony of Anton and Frank, however, appear the following facts: First, that Frank spent some time in Cedar Rapids and Chicago, as before mentioned, during the performance of the 12 years' services; second, Frank acquired 40 acres of land across the road from the 133-acre tract. He farmed this while working for Anton. But there was only a small portion of it tillable, and Anton received the hay and the rough feed. Sometimes Anton assisted Frank in doing this, and Frank always used the horses and machinery belonging to Anton; and third, Frank says he received no wages of any kind from Anton during the said 12-year period, yet he clothed himself, and took the trips before described. Explanation of this, however, is made, to the effect that, when Frank first came to Anton, he had $150, and while at Cedar Rapids and Chicago, he earned some additional money. No doubt he also received small profits from the 40 acres. Perhaps in this isolated abode these bachelors required but little clothing or spending money. These apparent conflicts are fairly well explained, when considered with the entire record, and we do not think appellant has established an absence of, or even an inadequate, consideration.

V. Even though Anton and Frank are brothers, the transaction under consideration, after being given the required scrutiny, seems legitimate, honest, and fair, based upon a full consideration, and inaugurated without any intention on the part of either to defraud creditors. At the time the deed was made, Frank did not know that Anton was indebted to appellant. Forsooth, Anton himself did not realize it; because, when, sometime before, he paid the full amount of his note to appellant, it was understood that all indebtedness was thereby satisfied. Nine years had elapsed since Anton executed Albert's note as surety. Apparently during that interim appellant said nothing about it.

Intention to defraud, therefore, could not have existed, because neither Anton nor Frank realized that appellant's obligation had not been paid. Throughout the record there appears good faith on the part of each brother. Wherefore, Frank entered into no scheme with Anton to defraud, cheat, hinder, or delay appellant.

VI. Furthermore, appellant insists that, at the time the deed was made from Anton to Frank, something was said in reference to the grantee's obligation to support the grantor. A careful reading of the scrivener's testimony, however, does not uphold this contention. Upon this subject, that witness said:

"It seems that something was said about Frank, supporting Anton the rest of his life, and Frank, then making a will back to Anton in connection with this transaction. I just got that impression."

Both Anton and Frank denied the existence of any such agreement, and the language of the scrivener does not rise to the dignity of such a positive declaration as would warrant our basing a finding upon it. Consideration of this matter must take into account the foreign birth of these men, their education, habits of life, and general surroundings. The district court found for appellee, and after carefully reviewing all the evidence, we are constrained to say that we agree therewith.

Wherefore, the judgment and decree of the district court must be, and hereby is, affirmed.—*Affirmed.*

ALBERT, C. J., and EVANS, FAVILLE, WAGNER, and GRIMM, JJ., concur.