ELLEN L. ALLEN, administrator, *vs.* WILLIAM H. ALLEN.

Worcester.    September 30, 1912. — October 15, 1912.

Present: RUGG, C. J., MORTON, LORING, BRALEY, & DeCOURCY, JJ.

*Equity Jurisdiction*, Fraud.   *Husband and Wife.   Equity Pleading and Practice,*
    Findings of master.

In a suit in equity by a widow against a nephew of her deceased husband to have certain deeds of real estate from her husband to the defendant set aside as a fraud on her marital rights, where it appears that the conveyances complained of were founded on good and valid considerations, it is necessary for the plaintiff to prove not only that the conveyances were made in fraud of her marital rights but also that the defendant knew or had notice of that fact.

In a suit in equity by a widow against a nephew of her deceased husband to have two deeds of real estate from her husband to the defendant set aside as a fraud upon her marital rights, it appeared from a master's report that when the deeds were made the plaintiff's deceased husband was seventy-eight years of age and that an action brought by the plaintiff against him for breach of promise of marriage was pending, that the defendant as consideration for the conveyances gave the deceased a bond for his support during his life and further agreed that the deceased should have the net income of the real estate during his life, that three weeks after the execution of the second of the deeds to the defendant the action for breach of promise was settled by the payment of a sum of money to the plaintiff, that a week later the plaintiff married the deceased, that two days before the marriage the defendant recorded the deeds, and that the defendant never informed the plaintiff that he had the deeds of the property or that he had given the bond for support.  The master found that one of the motives of the deceased in making the conveyances was to deprive the plaintiff of all interest in the real estate upon his death and that "the defendant took said deeds with full knowledge of the effect of the transfer upon the plaintiff's rights, if any."  It further appeared, that the deceased lived for more than eight years after his marriage to the plaintiff, that during this time the plaintiff "skilfully performed the work of keeping the house and caring for her husband," and that, although during these years the deceased was in full enjoyment of the granted premises, the defendant furnished him with support to an amount found by

the master. *Held,* that it could be found that the bond for the support of the deceased was given in good faith and was a good consideration for the conveyances; and that, the conveyances having been made after the action for breach of promise had been brought and before it was settled, when the relation of the plaintiff to the deceased was that of creditor, it could be found that the conveyances when made were not a fraud on the plaintiff's marital rights.

A suit in equity by a widow against a nephew of her deceased husband, to have two deeds of real estate from her husband to the defendant set aside as a fraud upon her marital rights, came before this court on an appeal from a decree dismissing the bill upon the report of a master which did not contain the evidence before him and to which no exception was taken. The master's report warranted findings that the deeds from the deceased to the defendant, which were made respectively six weeks and a month before the plaintiff's marriage to the deceased, were given for good and valid considerations and that the conveyances when made were not a fraud on the plaintiff's marital rights. The master found that on the day of the marriage and at various times previously the deceased had stated to the plaintiff, "that all his property remained in his name," that the plaintiff relied on his statements that the real estate conveyed to the defendant was his and that this was one of the considerations which induced her to marry him. It was not found by the master that the defendant knew of these statements. *Held,* that although the false statements of the plaintiff's husband "that all his property remained in his name" were a fraud on the plaintiff's marital rights, yet, the master having made no finding that the defendant knew of these statements and the evidence not being reported, no finding of such knowledge could be made by this court.

LORING, J. This case comes up on an appeal from a decree* dismissing the bill of complaint. The decree was entered on a report which did not contain the evidence before the master and to which no exceptions were taken.

The bill was brought by a widow against the nephew of her deceased husband to have two deeds of real estate situate in West Brookfield, made by the husband to the nephew, set aside as a fraud on her marital rights.

The facts found by the master are these: The plaintiff and Seth Allen her deceased husband were married on November 22, 1900, and the deeds were executed, one on October 11, 1900, forty-two days, and the other on October 25, 1900, twenty-eight days before the marriage ceremony. At the time that they were executed an action was pending, brought by the plaintiff against Allen for breach of promise of marriage. In May, 1897, Allen, who was then seventy-five years of age, had made the plaintiff an offer of marriage, stating that he had the "two pieces of property" cov-

---

* The decree was made in the Superior Court by *Hall,* J. The master was Edward T. Esty, Esquire.

ered by these deeds, and orally agreeing that if she married him she should have, on his death, what property he had. Thereupon the plaintiff went to Seth's house "with the expectation of immediate marriage" and remained there for three years and one month; during this time she acted as housekeeper without compensation and paid "a substantial amount of her own money" in household expenses. The day after she left, Seth followed her to Boston and signed a written agreement to marry her within two weeks. She returned to his house on the same day. At the end of two months, namely, in September, 1900, the marriage not having taken place, the plaintiff again left Seth's house and brought the action for breach of promise of marriage. The master found that the two deeds here in question were given by Seth to the nephew "for the love, affection and kindness shown him" by the nephew and also in consideration of a bond for his support during life, given by the nephew to Seth. This bond of support is dated in October, but the day of the month was left blank. Under date of November 1, 1900, an agreement was made by which, after reciting that Seth had conveyed to the nephew two parcels of land and had received as consideration therefor a bond for support, the nephew agreed, at Seth's "request and in part fulfilment of the conditions of said bond," that Seth should have the income of the real estate during his life (he paying insurance and taxes), and that if he should leave a widow, she should have the same right for one year after his decease. This agreement was executed and delivered at "about the time of the transfer of the property" to the nephew. The master found that "one of the motives actuating Seth in making these conveyances to the defendant was to deprive the plaintiff of all interest in these two estates upon his death," and that "the defendant took said deeds with full knowledge of the effect of the transfer upon the plaintiff's rights, if any." During the months of September, October and November, Seth visited the plaintiff in Boston and sent the defendant to her to settle the action and induce her to return. She refused to return until she had been paid $2,000 in settlement of the action brought by her. This was paid to her by the defendant in Seth's behalf on November 15, 1900, and she returned with the defendant to Seth's house on that day. The two deeds here in question were recorded on November 20, 1900. Two days afterwards, on

November 22, 1900, Seth and the plaintiff were married. On the day of the marriage and "at various times before," Seth stated to the plaintiff "that all his property remained in his name" and the plaintiff relied on the fact that as stated by Seth the land covered by the two deeds here in question was his; and "this fact was one of the considerations which induced her to marry him." A short time after her marriage the plaintiff went to the registry of deeds and there first learned of the existence of the two deeds. She did not know of the bond for support or of the agreement as to the rents until after her husband's death. Her husband died on February 22, 1909. She was a faithful wife to her husband during the eight years and three months of their married life. In addition the master found that "the defendant at all times did what he could to promote the marriage between the plaintiff and his uncle, and was an active agent of his uncle in the arrangements which were made and in the conferences had in September, October and November, 1900, in consequence of which the plaintiff returned to Seth's home and married him," and that "the defendant never informed the plaintiff that he had deeds of the property, nor that he had given a bond for support." Seth represented that the two lots were worth $4,800, and they were assessed for $4,725. The master found that "Seth lived in part of one of the houses and collected all the rents from both houses, the rental value of which was twenty-one dollars a month, until his death; and the plaintiff collected them for one year after his death, in accordance with said agreement." It was also found by the master that "the plaintiff was in all their married life an efficient and faithful wife, and skilfully performed the work of keeping the house and caring for her husband," and that "while the defendant rendered other services to his uncle, all the expenditures and charges which the defendant . . . made on his account" amounted to $617.44. At his death Seth left personal property inventoried at $2,680.

As the conveyances here complained of were founded on both good and valid considerations, it was necessary for the plaintiff to prove not only that they were made in fraud of her marital rights but that the defendant knew or had notice of that fact. See *Snow v. Paine,* 114 Mass. 520, 525; *Green v. Tanner,* 8 Met. 411, 419. The conveyance in *Chandler v. Hollingsworth,* 3 Del. Ch. 99, which

is mainly relied on by the plaintiff, was a voluntary one in which case the grantee stands in the shoes of the grantor, and it is not necessary to prove that the grantee had knowledge or notice of the grantor's fraud.

The fact that the defendant gave back to Seth the agreement whereby he was entitled to occupation of the premises during his life, unexplained, gives the conveyances the look of being colorable ones merely. And the fact that the deeds were not recorded by the defendant until after the action for breach of promise had been settled and until within two days of the marriage gives rise to a suspicion as to the defendant's good faith. But it is a fact that these conveyances were made after the action for breach of promise of marriage had been brought and before it was settled. At that time, on the facts found by the master, the plaintiff was a creditor of Seth Allen and the conveyances might be found to be a fraud on her rights as a creditor, but as no agreement of marriage then existed between them it would be hard to make out that the conveyances were a fraud on the plaintiff's marital rights. And a consideration of Seth's condition at that time goes far to remove, if it does not entirely remove, the impression that these conveyances taken in connection with the agreement back giving Seth a right of occupation were colorable merely. At the time of the conveyances, on the facts found by the master, Seth was under liability to the plaintiff for an undetermined amount. It may be inferred from the facts stated in the master's report that he had some $4,600 in money and these two parcels of real estate. He was then seventy-eight years old. Under the circumstances he well might want to secure support during the rest of his life. And the subsequent fact that although Seth was in full enjoyment of the granted premises the defendant furnished him with support to the amount of $617 is some evidence that the previous transaction was not a colorable one. In that connection it is to be remembered that at the time of the conveyances it could not be assumed that a marriage between the plaintiff and Seth ever would take place. Under these circumstances the amount likely to be expended in Seth's support might be thought to be greater than the amount subsequently expended; for the plaintiff as a wife afterwards performed without compensation the duties of a housekeeper.

For these reasons these conveyances when made hardly could be found to be a fraud on the plaintiff's marital rights. But there was a fraud on her marital rights when in spite of these conveyances Seth stated to the plaintiff at various times before their marriage and on the day of the marriage that "all his property remained in his name." It is not found by the master that the defendant knew of these statements by Seth. The master went no further than to find that "the defendant took said deeds with full knowledge of the effect of the transfer upon the plaintiff's rights, if any." The fact that the deeds were not recorded by the defendant until two days before the marriage and were recorded by him then raises a suspicion as to his good faith. But suspicion is not proof, and the burden of proving bad faith was on the plaintiff. What explanation, if any, was given by the defendant for his not recording the deeds before November 20 and for recording them then (two days before the marriage) we do not know. The evidence on which the master made his findings is not before us. The master not having found that the defendant knew of his uncle's fraud, nor facts tantamount to that, in the absence of the evidence on which the master acted we cannot now make a finding to that effect.

*Decree affirmed.*

*J. C. Hammond*, (*H. C. Davis* with him,) for the plaintiff.

*J. R. Thayer*, (*H. H. Thayer & H. E. Cottle* with him,) for the defendant.