FRANK E. MARBLE *vs.* ANNIE BLOOM.

Essex.    November 11, 1927. — January 6, 1928.

Present: BRALEY, CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Fraud. Deed,* Validity. *Land Court,* Findings by judge, Requests and rulings, Decision, Exceptions. *Evidence,* Presumptions and burden of proof, Competency.

At the hearing by a judge of the Land Court of a writ of entry brought under the provisions of G. L. c. 236, § 47, by the purchaser at an execution sale of real property which had been specially attached as stand-

ing in the name of the tenant, the wife of the defendant in the action where the attachment was made, there was evidence that the conveyance to the tenant was from the brother of her husband and resulted from an agreement between her husband and the brother as to lands standing in the brother's name when the husband was indebted to the plaintiff. There also was evidence that, if the conveyance was in fraud of the husband's creditors, the tenant did not know of it, but paid therefor money, some of which she had earned and some had procured from her aunt. The judge found for the tenant. *Held,* that

(1) Fraud on the part of the tenant's husband did not affect the tenant's title where it did not appear that she participated therein or had notice or knowledge thereof when she took title;

(2) The burden of proving bad faith on the part of the tenant rested upon the demandant;

(3) There being evidence to support the findings by the judge, they were final, and requests for rulings based on facts inconsistent therewith properly were refused;

(4) Evidence that, three months after the conveyance to her, the tenant at the request of a mortgagee guaranteed the payment of a mortgage on one of the parcels conveyed to her, was competent to show that she claimed to be the owner of the property at the time the guaranty was executed by her; and, even if immaterial, its admission was not prejudicial to the demandant and did not constitute reversible error.

A judge of the Land Court is not required to state in his decision his reason for declining to give requests for rulings.

A judge of the Land Court is not required to make subsidiary findings in addition to those which he has embodied in his decision as the basis of his ultimate conclusion.

WRIT OF ENTRY, dated November 17, 1923.

In the Land Court, the action was heard by *Davis,* J. Material evidence and facts found by the judge are stated in the opinion. The demandant asked for, and the judge refused, the following rulings:

"2. If the . . . conveyances [from David Bloom to the tenant] were made with intent on the part of Barney Bloom to defraud his creditors, they are voidable."

"6. The fact that the tenant about three months after the conveyances to her, at the request of the Commonwealth Savings Bank which held a mortgage on one of the parcels, guaranteed the payment of that mortgage is not material to the issues involved here, should have been excluded, and is now stricken out."

"8. If the effect of the conveyances to the tenant was to put the property out of the reach of her husband's creditors,

and if the tenant knew it, the demandant is entitled to prevail.

"9. If the tenant and her husband at the time of the conveyances in question, joined in a mortgage to Thomas F. Porter for an expressed consideration grossly in excess of that actually received, that is evidence of her actual knowledge of and participation in her husband's fraud.

"10. If, under the circumstances disclosed in this case, the tenant kept off record the discharges of the Goldman, Guterman and Porter mortgages after they had been paid, those facts are evidence of a participation in her husband's fraud.

"11. If the tenant furnished a part of the consideration necessary to have the Bond Street property conveyed to Simon Goodman when it was really her husband's property, that circumstance was sufficient to put her in inquiry as to the real nature of the whole transaction.

"12. If the court finds that the tenant testified falsely that her aunt, Dora Levine, withdrew $400 from the County Savings Bank and loaned it to her, when in fact she actually paid it to Simon Goodman, that fact is evidence that the tenant knew the facts and the nature of the Bond Street conveyance.

"13. If the court finds that the tenant testified falsely that her aunt, Dora Levine, withdrew $400 from the County Savings Bank and loaned it to her, when in fact she actually paid it to Simon Goodman, that fact is evidence that the tenant knew the facts and the nature of the conveyances in question.

"14. If the tenant knew the essential facts and the nature of the 'Bond Street transaction, those facts were sufficient to put her on inquiry so that she could not claim to be a purchaser without notice, of the properties in question."

Of rulings asked for by the tenant, the judge gave the following, except the last sentence in the sixteenth, which he refused as a request for a finding of fact:

"1. Upon all the evidence there is no expressed trust.

"2. Upon all the evidence there is no implied trust."

"9. The tenant to procure the deeds of the property to

her signed mortgage notes and assumed obligation thereunder which constituted good consideration for the deeds to her."

"16. The demandant to recover must prove, first, that the conveyance of the land to the tenant was procured by her husband in fraud of his creditors, and also that such fraud was participated in by the tenant; and this the demandant has not proven."

Judgment was ordered for the tenant. The demandant alleged exceptions.

*T. S. Bubier,* for the demandant.

*E. J. Garity,* for the tenant.

CROSBY, J. This is a writ of entry brought under the provisions of G. L. c. 236, § 47, by the purchaser at an execution sale of real property, which, in an action brought by him, had been specially attached as standing in the name of the wife of the defendant in that action — one Barney Bloom. The demanded premises consist of two parcels of land, one situated on South Street and the other on Amity Street, in Lynn.

It is agreed that for several years before 1920, David Bloom, a brother of Barney Bloom, the tenant's husband, held the record title to the demanded premises and also to an undivided half part of a parcel of real estate on Bond Street in Lynn; that the demandant had for a long time been a creditor of Barney Bloom; that in 1919 litigation arose between the brothers respecting these properties; that it was terminated by an agreement entered into between them, by which the Bond Street property was conveyed to one Simon Goodman, and on the same day the demanded premises were conveyed to the tenant. This agreement provided that "The said David agrees to sell and said Barney agrees to buy, — title to be conveyed to any nominee of said Barney." Certain property was involved in an equity suit between David and Barney and consisted of a mortgage on a lot on Vine Street in Lynn, the lot on Bond Street, and the demanded premises. The agreement was carried out and Barney arranged for new mortgages on the demanded premises, to be held as follows: a mortgage for $1,400 held by one Goldman, and one for $700 by one Porter. The

Goldman mortgage was written for $1,500, and the Porter mortgage for $5,000, of which $700 was advanced in cash and further sums were to be furnished as needed for taxes and improvements. Under the agreement between the brothers, Barney had the Bond Street property conveyed to Goodman who, the judge finds, was a "straw man" for him, and the demanded premises were conveyed to the tenant. In carrying out the agreement Barney agreed to pay David for his interest in these properties $4,000; it was claimed that $1,000 of this sum was paid and the balance was to be paid within fifteen days. The $1,000 was paid by check of Goodman; at the time it was given Goodman did not have $1,000 on deposit and this amount the trial judge found was given to him by the tenant.

The judge found that the tenant came to this country when she was fourteen years of age and lived with her aunt, Dora Levine; that she was a working girl and was thrifty; that at the time of her marriage she had saved a few hundred dollars; that her husband told her and her aunt that the demanded premises could be purchased for $800 to $1,000 and advised the purchase; that the tenant had at that time saved about $450 and Mrs. Levine said that "she would help on a loan if necessary." The judge further found that the tenant on July 28, 1920, deposited $450 in a savings bank account where she had a balance of about $100; that on the same day she went to the savings bank with her aunt and the latter withdrew $400, which she paid over with $100 in cash to the bank and took in return the bank's check for $500, which she indorsed to Goodman as trustee. Goodman's only bank account stood in his name as trustee. On July 29 he deposited in his account $1,000, having on the day before drawn a check for $1,000 payable to the order of counsel for David and Barney Bloom. This payment was made in carrying out the settlement between them. The Bond Street property conveyed to Goodman was later lost so far as he or the tenant's husband was concerned, by reason of the foreclosure of prior mortgages. The demanded premises were conveyed to the tenant subject to the mortgages of Goldman and Porter respectively. The Goldman

mortgage was later assigned to Mrs. Levine as security for her loan to the tenant, and the Porter mortgage was paid and discharged, but the discharge was not recorded.

The judge found that the tenant knew little about business affairs and left such matters to her husband; that she worked at dressmaking and other jobs; that there was no evidence to show that in taking title to the property in her name she participated in any trust for her husband or that she took it in her own name to keep it from his creditors; that on the contrary with her aunt's assistance the tenant advanced the money necessary to secure the demanded premises to her as a home and as an investment. She testified that while she had known for some time there had been trouble between her husband and his brother, she never knew the nature of it, she knew of no litigation between them, and that she never heard of the demandant until this suit was brought.

It is evident that the trial judge believed the testimony of the tenant and that he placed little reliance upon much that was offered by the demandant. He states in substance that the testimony of both David and Barney Bloom was given without any apparent regard to truth, and that Goodman's testimony was shifty and unreliable throughout; that he was satisfied that Goodman "was merely a straw man for Barney."

The judge further found that the transfer of the Bond Street property and of the demanded premises was a single transaction. The fraud participated in by the tenant's husband and Goodman in having the Bond Street property conveyed to the latter does not, however, prevent the tenant from maintaining her title to the demised premises, unless she participated in that fraud or had notice or knowledge of it when the property was conveyed to her. If the purchase money was paid by her through Goodman, it might be found to be evidence of bad faith on her part, yet it is not conclusive as showing fraud. The burden of proving bad faith rested upon the demandant. *Allen* v. *Allen*, 213 Mass. 29, 34.

The judge was warranted in finding that the tenant's husband obtained the money from her and her aunt for the

purchase of the equity in the premises and that it was in fact so used.

The case is before this court upon certain evidence reported, together with the evidence recited in the decision by the trial judge, which is stated in the record to be all the material evidence upon the questions intended to be raised by the exceptions. The findings by the court are final if there is any evidence to support them. *Moss* v. *Old Colony Trust Co.* 246 Mass. 139, 143, and cases cited. The same rule applies to findings of fact made by the Land Court where no claim is made for a trial by a jury. G. L. c. 185, §§ 15, 16. *Mitchell* v. *Cobb*, 220 Mass. 60. *Bucella* v. *Agrippino*, 257 Mass. 483.

A careful examination of the evidence shows that the findings were not without evidence to support them. The money paid by the tenant to purchase the property was sufficient evidence to show that she furnished a consideration. The findings that the tenant had no knowledge or notice of any fraud on the part of her husband to cheat his creditors, and that she did not participate in any fraud, make it plain that the refusal to give the demandant's second, eighth, ninth, tenth, eleventh, twelfth, thirteenth and fourteenth requests was not error. The fact that, three months after the conveyance, the tenant at the request of the savings bank guaranteed the payment of a mortgage on one of the parcels conveyed to her was competent to show that she claimed to be the owner of the property at the time the guaranty was executed by her. If such a request was made of her by an official of the bank, it might be found that unless such guaranty was given the bank might foreclose its mortgage. If, as the demandant argues, this evidence should have been excluded as immaterial, it is plain that its admission was not prejudicial to the demandant. Accordingly no harmful error appears in refusing to give the sixth request. The trial judge was not required to state his reasons for declining to give requests for rulings. He saw the witnesses and heard them testify: he was in a position to determine the weight and credibility to be given to their testimony.

The findings of fact cannot be said to have been unwar-

ranted upon the reported evidence. It was not necessary for the judge to make subsidiary findings in addition to those which he has embodied in his decision as the basis of his ultimate conclusion. The exceptions to the giving of the tenant's first, second and ninth requests, and to the sixteenth so far as given, cannot be sustained.

As no error of law appears, the entry must be

*Exceptions overruled.*